Argued January 8, affirmed March 21, petition for rehearing
denied May 1, 1962

## CONSOLIDATED FREIGHTWAYS, INC. *v.* STATE TAX COMMISSION
370 P. 2d 224

*Robert R. Carney* and *Ralph R. Bailey,* Portland, argued the cause for appellant. On the briefs were Maguire, Shields, Morrison, Bailey & Kester, Portland.

*Theodore W. de Looze,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Robert Y. Thornton, Attorney General and Alfred B. Thomas, Assistant Attorney General, Salem.

Before MCALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

SLOAN, J.

Plaintiff appeals from a decree which sustained an order of defendants, acting as the tax commission, imposing deficiency corporation excise tax assessments against plaintiff. The assessments were for the years 1949 to 1953 inclusive. A separate case was filed for each of the years in question. These cases were consolidated for trial and on this appeal. The issues in each case were identical.

Plaintiff operates in both intrastate and interstate commerce in Oregon. The problem presented by the case was the method used to apportion that part of plaintiff's income that is attributable to Oregon activity. The Commission used one method, plaintiff insists on another.

The Commission used a process of allocation which began with plaintiff's gross income[1] from all its operations for a given year. From that the Commission subtracted all of plaintiff's expenses incurred in its total operations. The expenses deducted included the ton-mile tax plaintiff was otherwise required to pay to this state for the use of its highways. The result of this computation produced a figure designated as apportionable net income. The amount apportioned to Oregon was determined by the proportion that total revenue miles operated in Oregon were in ratio to the total revenue miles plaintiff operated in all states. That ratio or proportion when it was applied to plaintiff's total apportionable income produced the amount thereof the Commission said was attributable to and taxable by Oregon.

Plaintiff's computation of income was made by a

[1] There were certain items of income and expense of a local nature not included in these computations. They can be ignored for our purposes.

process of separating from each freight bill issued by it during a given year the actual amount of revenue it received for miles operated in Oregon; either intrastate or interstate. Plaintiff contends this is a better way to arrive at its Oregon income than the method employed by the Commission.

The real dispute, however, was not as to the method of computing income but the process of deducting expenses. The problem was made particularly acute because Oregon's ton-mile tax charged against plaintiff was substantially greater than any similar tax charged by any of the other states in which plaintiff did business. For 1953, by example, the Oregon tax was approximately $760,000. This was about one-third of all such taxes paid by plaintiff to all of the states in which it operated. Plaintiff's revenue mileage in Oregon for the same year was about 16 percent of its total mileage. Plaintiff had deducted the total amount of the ton-mile tax from its Oregon income computed as above mentioned. The Commission we have mentioned, included this tax as a part of total operating expense—like fuel and wages—in arriving at total apportionable net income, by the process above described. Plaintiff contends that the Commission's method violates the Oregon apportionment statute and Section 1 of the Fourteenth Amendment to the Federal Constitution.

The statute which guided the Commission for the years in question was Volume 7, § 110-1507 OCLA, (ORS 314.280). The statute read:

"(a) If the gross income of a corporation is derived from business done both within and without the state, the determination of net income shall be based upon the business done within the state, and the commission shall have power to permit or require either the segregated method of reporting

or the apportionment method of reporting, under rules and regulations adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state.

"(b) The provisions of subsection (a) dealing with the apportionment of income earned from sources both within and without the state of Oregon are designed to allocate to the state of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. Any taxpayer may submit an alternative basis of apportionment with respect to its own income and explain that basis in full in its return. If approved by the tax commission that method will be accepted as the basis of allocation."

The pertinent portion of Article 507-1 of the Commission's Regulations applicable to the years in question provided:

"* * * In most cases the circumstances are such that the income arising from the business done in Oregon must be determined by the apportionment method (article 507-2) or the segregated accounting method (article 507-3), but in some cases the facts may require the use of another method combining features of both. If it is substantiated upon the submission of detailed and complete evidence that the method required to be used in compliance with the following articles reaches an unreasonable result as applied to the particular taxpayer, the method will be revised (section 110-1507(b));"

It is conceded that plaintiff's business is unitary in character, and that the apportionment method is usually the appropriate means of reporting income for a unitary business.

■ It is not arguable that a taxpayer who would upset the taxing authorities apportionment of income for tax purposes must show the apportionment to be arbi-

trary and unreasonable by a clear and convincing preponderance of evidence. The taxpayer's burden of proof is a heavy one. *Norfolk & Western Railway Co. v. North Carolina ex rel,* 1936, 297 US 682, 688, 56 S Ct 625, 80 L Ed 977; *Butler Brothers v. McColgan,* 1942, 315 US 501, 62 S Ct 701, 86 LEd 991; *Hans Rees' Sons, Inc. v. State of North Carolina ex rel,* 1931, 283 US 123, 51 S Ct 385, 75 L Ed 879; *Hines Lumber Co. v. State Tax Commission,* 1959, 215 Or 453, 469, 470, 336 P2d 75.

In its brief, plaintiff makes this assertion of its basic premise in this case:

"The result of the failure of the Tax Commission's formula to allow the deduction in full for all direct taxes paid in the state of Oregon from Oregon income results in Oregon income being substantially over-stated. This is precisely the same as taxing income which was not earned in this state. Income earned in other states is thereby applied to cover direct taxes paid in Oregon."

■ Unfortunately for plaintiff, we find no evidence in this record which clearly and convincingly supports that conclusion. We are provided with no mathematical computation or formulae which clearly demonstrates that Oregon is taxing income earned elsewhere. We cannot point a finger at any part of the evidence and say that this clearly proves that Oregon was taxing more than its fair share of plaintiff's income. All that is shown is that the Oregon ton-mile tax imposed a much higher cost on a motor carrier for the use of Oregon highways than that imposed by any of the other states wherein plaintiff used the highways. That was nothing more than a legislative determination that it will charge a high toll for this kind of use of its highways. It was a cost of doing business in Oregon

for anyone who saw fit to engage in the carriage for hire business in this state. The wisdom of the policy which exacts such a high toll is not for us to judge.

Plaintiff concedes, and by its process of computing the total tax which was due Oregon acknowledged, that wages, fuel, maintenance and all other similar costs must have been apportioned between the states in some manner similar to that adopted by the Commission. Thus if Oregon had poor highways or if for any other cause exceptionally high operative costs were incurred in Oregon, plaintiff would concede that such cost must have been apportioned. Consequently, we view the ton-mile tax, wise or otherwise, to have been cost of operation which was properly chargeable as a total expense in arriving at plaintiff's apportionable income for the years in question.

■ Nor does it aid plaintiff to say that a carrier engaged only in intrastate carriage may have deducted the full amount of the ton-mile tax. Such a carrier also deducted the full amount of its wages, fuel and other costs. There was no showing here that the total excise tax paid by a local carrier on its Oregon income would have been disproportionate to the amount of tax plaintiff would have been obliged to pay on a similar amount of Oregon income, by whatever means plaintiff's Oregon income was computed. A contention that an interstate carrier was subjected to unjust discrimination must be supported with facts, not conclusions. We do not know that plaintiff's net return from a given amount of ton-mile revenue would have been different than that enjoyed by a local carrier.

There was one other failure in plaintiff's position. It has not only attempted to show that the Commission's formulae was bad, it also claimed that its process in allocating income to Oregon was more fair and equi-

table. We think plaintiff has also failed in this. To indicate why we think so it is necessary to mention a few more facts.

Plaintiff's headquarters for its entire operation were located in Portland. There it conducted nearly all of the administrative, maintenance, accounting, dispatching and similar services for all of its activity. The authorities we have cited and all others we have examined recognize that such activity was a material income producing factor in this state. It is uniformly recognized that an apportionment formulae may properly consider such activity within a state as a measure of the income attributable to that state. Allocation of Income in State Taxation, Altman & Keesling, Commerce Clearing House, Inc., Second Edition 1950; Special Report of the State Tax Commission (New York); The Allocation of Corporate Income for the Purpose of State Taxation by Robert S. Ford, J. B. Lyon Company, Albany, 1933; Symposium, State Taxation of Multistate Business, 1957, 18 Ohio State Law Journal 3; Silverstein, Problems of Apportionment in Taxation of Multistate Business, 1949, 4 Tax Law Review 207. And see the extensive discussion by Justice Stone of a kindred matter of local activity in *Western Live Stock v. Bureau of Revenue,* 1938, 303 US 250, 58 S Ct 546, 82 L Ed 823, 115 ALR 944, and generally, Reports of Committee on State and Local Taxes of the Section of Taxation, American Bar Association.

The Commission was, therefore, justified in rejecting plaintiff's basis of computing income attributable to Oregon. Plaintiff's method simply gave no consideration to the value of plaintiff's activities in Oregon. The method used by plaintiff would allocate the same proportion of income to a state in which

it had no activity other than driving its vehicles upon the highways of that state. Oregon was obviously entitled to tax a higher proportion of plaintiff's income than one of the so called "bridge" states.

It cannot be said that the Commission's formulae gave much greater weight to plaintiff's management activity in Oregon. A mileage apportionment did, presumably, give some affect to that factor. However, that is not the problem. Plaintiff has assumed the burden of showing that its formulae was much better and much fairer than that of the Commission. In this it has failed. Plaintiff's formulae did not give Oregon its fair share of plaintiff's income.

Decree affirmed.

McALLISTER, Chief Justice, dissents.