# WAH CHANG CORPORATION *v.* STATE TAX COMMISSION

Orval N. Thompson, Albany, argued the cause for plaintiff. Orval N. Thompson, Albany, and Weatherford, Thompson and Horton, Albany, submitted briefs for plaintiff.

Walter J. Apley, Assistant Attorney General, Salem, argued the cause for defendant. Walter J.

Apley, Assistant Attorney General, and Robert Y. Thornton, Attorney General, Salem, submitted a brief for defendant.

Decision for plaintiff rendered July 15, 1964.

PETER M. GUNNAR, Judge.

This is a suit to set aside defendant's Opinion and Order No. I-63-37, which affirmed an additional assessment of corporation excise tax against plaintiff for the year 1957.

A foreign corporation, plaintiff's 1957 income was derived from business done both within and without Oregon. On its Oregon corporation income tax return, it reported its income using the segregated method of accounting. Defendant recomputed plaintiff's Oregon income using the apportionment method and assessed the additional tax in dispute. Plaintiff brings this suit to set aside defendant's affirmance of its assessment after formal appeal to the commission.

Defendant agrees that the issue of this case is accurately set forth by plaintiff in its brief as follows:

> "Basic Issue: Were the business activities of Wah Chang Corporation that were carried on in the State of Oregon during the year 1957 of such a nature as to require the business activities of Wah Chang Corporation both within and without the State of Oregon to be treated as a unitary business and require the use of the 'apportionment method' in preparation of the Oregon Corporate Excise Tax Return of Wah Chang Corporation for the year 1957?"

Paraphrased, our question is: Was Wah Chang a unitary business here and elsewhere in 1957?

The courts have given up trying to provide tax-

payers and taxing officials with a workable, definitive definition of "a unitary business."

> "Every definition of the word 'unitary' must of necessity be general, and since such must be its nature, a repetition of definitions cannot be helpful in the solution of any specific problem. In determining whether a business is unitary or otherwise in character, a knowledge of the facts is essential; in truth, the facts are all important. * * *" *Hines Lumber Co. v. Galloway,* 175 Or 524, 539, 154 P2d 539 (1944).

Two attempts at exposition of a general formula have been attempted. In its regulations, Reg 7.180(1)-(B) [now Reg 4.280(1)-(B)], defendant adopted the rule that:

> "* * * The term 'unitary business' means that the corporation to which it is applied is carrying on a business, the component parts of which are too closely connected and necessary to each other to justify division or separate consideration as independent units. * * * Basically, if the operation of a business within Oregon is dependent on or contributes to the operation of the business outside the state, the entire operation is unitary in character, * * *."

For lack of a better handle, this rule can be called the "dependent on or contributes to" rule.

The other general rule is called the "unity" rule. It requires a "unitary" business to have the three unities of (1) ownership, (2) operation, and (3) use. Authority for the unity rule is found in *Butler Brothers v. McColgan,* 315 US 501, 508, 62 S Ct 701, 86 L ed 991 (1941); and *Edison California Stores v. McColgan,* 30 Cal2d 472, 183 P2d 16, 20 (1947). In a very recent opinion, the Supreme Court has held that these cases govern the law of Oregon. *Zale-Salem,*

*Inc. v. Tax Com.,* 78 Adv Sh 651, 653, 391 P2d 601 (1964).

Certainly, the unity rule is easier to apply and easier for the taxpayer to understand. Something can definitely be said for the viewpoint that justice in taxation is better served when a taxpayer can understand and apply the law by which he is taxed. But whether or not the unity rule has superseded the regulation's "dependent on or contributes to" rule is immaterial to this case. We are admonished by *Hines Lumber Co. v. Galloway, supra,* that the facts are "all important." The facts of this case clearly establish that plaintiff's Oregon activities are not unitary with its other business under either rule.

Wah Chang, which in Chinese means great undertaking, is primarily a tungsten trading and refining company. K. C. Li started it and owned and fully controlled it until his death in 1961.

The story goes that, until World War I, only the Germans realized tungsten's value in making steel. Though plentiful in their empire, the British did not exploit it. Young K. C. Li became familiar with tungsten when he studied in England. When tungsten's importance was finally established at the outbreak of World War I, Li remembered having seen a large, easily accessible tungsten deposit on a mountainside in his native China. He returned to China, found the deposit, and sought to purchase it. Its owner had a beautiful young daughter and, by wooing this maiden Li separated her father from his tungsten. With this supply available he came to the United States and began his tungsten trading business which now is Wah Chang.

Whether this "farmer's daughter" story be truth or fiction, Wah Chang became a world recognized

tungsten trading and refining firm and Dr. K. C. Li became a world renowned tungsten authority and author.

In 1954, Wah Chang hired a brilliant young chemical engineer named Stephen W. H. Yih. Yih held degrees in chemical, electrical and mechanical engineering.

In 1956, the government sought Dr. Li's assistance in securing an expert Japanese chemical engineer to assist the Bureau of Mines in titanium reduction at its plant at Boulder, Nevada. When efforts to attract a Japanese expert failed, Dr. Li called for volunteers in his own organization. Yih volunteered. This was his first serious contact with the famous Li. Out of it grew the success story behind this tax litigation.

Yih went to Nevada on loan from Wah Chang. Soon he was producing the purest titanium sponge yet refined and had captured the attention and respect of government mineralogists. At that time the Nautilus submarine project desperately needed more zirconium. Wah Chang bid for the job of producing zirconium at the Glen Cove, N. Y. plant of its related company, Wah Chang Smelting and Refining Co. All bidders were turned down for technical incompetence. The Atomic Energy Commission then sought industry proposals to operate the zirconium reduction facility which the Bureau of Mines had at Albany, Oregon. The AEC could not operate it because the Eisenhower administration policy was not to compete with private industry. Aware of Yih's success at Boulder, the AEC approached him and proposed that he operate the Albany plant with Wah Chang financing.

Yih tendered this scheme to Dr. Li. Li knew nothing about zirconium. The reduction of zirconium compares to titanium reduction. Both are completely dis-

similar from tungsten refining. After Yih explained zirconium reduction and the AEC proposal, Dr. Li authorized him to try it and allocated to him a million dollars as working capital. The government contract provided that Yih operate the Albany plant for two years on a cost basis. Though not a corporate officer, Yih negotiated and signed the contract at Albany. He was in complete charge of the Albany operations.

Shortly after Yih began the Albany operations, the AEC approached him about the construction of an additional facility at that site. Yih went to New York to consult Dr. Li and returned with four million dollars and authority to build a new Wah Chang zirconium plant. From August, 1956 until June, 1957, Yih constructed the new plant and operated the government plant. He alone designed the new plant, contracted for its construction, and saw it to completion. Under Yih's direction the Wah Chang plant produced the highest quality zirconium yet produced.

That Yih became Wah Chang's president upon the death of K. C. Li in 1961 is not only interesting but perhaps material as some indication of the confidence and respect old K. C. Li had for Steve Yih.

From the outset, Yih operated Wah Chang's Albany division as an entity separate from the other Wah Chang operations. The Albany operations were completely dissimilar from the other Wah Chang activities. The reduction or refining processes of tungsten and zirconium were so different that they required completely different technical training for management. Wah Chang's only zirconium expert, Yih ordered all materials and supplies, negotiated and signed all contracts, developed and refined all processes, paid all bills, sent financial reports to New York only monthly, and had infrequent contact with other Wah

Chang executives. Wah Chang's head office only provided the money and received the government payments. All accounting was done at Albany. The only account kept in New York was a single control account on moneys forwarded to Albany and received from the AEC. No overhead charge for the New York office was made to the Albany business because "we didn't do anything for them."

The Albany plant did business only with the government. The AEC provided the zirconium, Wah Chang refined it, and the AEC took the finished product. In some instances, Wah Chang purchased partly refined zirconium but in 1957 most of the zirconium it refined was government owned. Thus, though the transfers to the government were treated as sales, the relationship often more closely resembled a manufacturing agreement.

Wah Chang had no central purchasing, no central sales, no advertising, no connected activity. The testimony established that neither the other Wah Chang enterprises nor the Albany division would have been affected in the slightest if the other had gone out of business.

It is hard to imagine a more separated corporate division. As the company's secretary-treasurer testified, "Wah Chang made an investment at Albany, that's all."

Defendant bases its assessment and its use of the apportionment formula primarily on innuendo and supposition. It surmises some scheme or plan to enlarge Wah Chang operations as the basis for denying the segregation which the facts so firmly establish. By innuendo it hints at connections with plants overseas. But it fails to establish that Wah Chang has plants overseas. Its conclusion is supported by guess

and suspicion while plaintiff has produced the facts and the testimony.

The commission urges that vital factors in Wah Chang's unitary nature are the furnishing of adequate financing and the providing of its stable long-term reputation in past dealings with the federal government. These were supplied by Dr. Li. But the cases in this field require far more. It is not enough that the company provide a separate division with financing, its reputation, and the possibility of entering the endeavor in return for the net profit.

■■■ To defeat segregated accounting, there must be a mutual contribution to their respective profits by various divisions of the company. In *Butler Brothers v. McColgan, supra,* this was shown by the centralized purchasing which permitted all units to buy for less, centralized advertising which permitted all units to reduce their advertising costs, centralized accounting and other office services which reduced the units' overhead costs. Each unit must contribute to the success of the over-all venture by individually or jointly permitting it to accomplish sales, savings, or profits throughout its various units which those various units could not realize individually. When this occurs, segregated accounting does not truly reflect the income of the individual unit because there is no way to individually measure this mutual contribution. Therefore, the apportionment method must apportion the various income and expense factors by formula among the various units. On the other hand, when one unit of a business is so dissimilar from all its other units that the unit doesn't buy or sell the same things, its accounting is completely different and separate, its operational processes are completely different, and its purchases and sales contribute nothing to the other units,

as is the case here, then that unit is segregated and entitled to segregated accounting.

To sustain defendant's assessment in this case would deny the possibility of segregated accounting to any division of a single corporation. This is not the purport of the decisions.

■ Furthermore, to sustain the assessment would be unconstitutional because it would result in Oregon taxing extra-territorial income. *Butler Brothers v. McColgan, supra.* Our statute gives the commission the right to require one or the other method of accounting. The statute states its purpose "fairly and accurately to reflect the net income of the business done within the state" and "to allocate to the State of Oregon on a fair and equitable basis a proportion of the income earned from sources both within and without the state." ORS 317.180 [now 314.280] The commission cannot exercise this power arbitrarily nor can it base its exercise on innuendo, guess, or supposition. Misuse of defendant's authority results in an unconstitutional assessment. When it improperly denies segregated accounting, requires the apportionment method, and assesses more tax, it levies an Oregon tax on income earned outside Oregon. *Hans Rees' Sons v. N. Carolina ex rel. Maxwell,* 283 US 123, 135-6, 51 S Ct 385, 75 L ed 879, 908 (1930). Our economy is becoming so integrated that nonunitary interstate enterprises have become rare. But when one does exist, it must be recognized—and plaintiff's Albany division is one such enterprise.

Plaintiff shall prepare a decree in accordance with this decision, setting aside defendant's Opinion and Order No. I-63-37, abating the assessment of additional excise tax against plaintiff for 1957, and allowing plaintiff its costs and disbursements incurred herein.