Argued December 3, 1974, affirmed April 1, 1975

COCA COLA COMPANY, *Appellant, v.*
DEPARTMENT OF REVENUE, *Respondent.*

533 P2d 788

*Joel Kuntz,* Portland, and *John R. Hay,* Portland, argued the cause for appellant. With Mr. Hay on the briefs were Davies, Biggs, Strayer, Stoel and Boley, Portland.

*Theodore W. deLooze,* Chief Tax Counsel, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Walter J. Apley and James D. Manary, Assistant Attorneys General, Salem.

Before O'CONNELL, Chief Justice, and HOLMAN, TONGUE, HOWELL, BRYSON, and SLOPER, Justices.

HOWELL, J.

This is a tax case involving the determination of the Oregon corporate excise tax liability of the Coca Cola Company, doing business throughout the United States, and its wholly owned subsidiary, Pacific Coca Cola Bottling Company, doing business in Oregon and Washington. Specifically, plaintiff seeks to reverse the decision of the Department of Revenue to assess additional taxes for the years 1963, 1964, 1965 and 1966. The Oregon Tax Court affirmed the action of the Department of Revenue, 5 OTR Adv Sh 405 (1974).

The facts have been stipulated and appear in the opinion of the Tax Court:

Taxpayer, a Delaware corporation with its principal office in Atlanta, Georgia, manufactures soft

drink syrups for fountain and bottled use. The syrups are sold to wholesale druggists, to other independent wholesale dealers, and to approximately 900 bottling plants throughout the United States. Plaintiff owns all the shares of approximately 40 of the 900 bottling plants, including Pacific Coca Cola Bottling Company (hereinafter Pacific), located in Portland, Oregon. Pacific is a separate corporate entity as are the other bottling plants owned by Coca Cola. Approximately 10 percent of the syrup manufactured by the plaintiff is sold to its subsidiary bottling companies and approximately 5 percent of the plaintiff's total sales are to wholly owned bottling companies. Plaintiff owns and operates a Portland syrup plant which supplies Pacific with its syrup. It is one of 12 in the United States preparing Coca Cola syrup, using a secret formula, as well as syrups for Fresca, Sprite, and other beverages. Sales of bottled syrup to so-called "independent bottlers" and wholly owned bottling companies are made at the same prices, which have been established by long-standing contracts. Pacific has operations in both Oregon and Washington. Its contractual agreement with plaintiff precludes it from buying syrups and bottling beverages in substantial competition with the products of the Coca Cola Company. All the bottling subsidiaries are wholly dependent upon the parent company for Coca Cola and most other syrups used by them.

Although given some degree of independence in the day-to-day management of bottling operations, all the bottling companies which are wholly owned subsidiaries, including Pacific, are subject to extensive control by the parent corporation as to the nature and quality of the product, the quality and nature of advertising, the methods of marketing, the research and

development of new products, the maintenance and audit of books and records, and the geographical area to be served. The parent company maintains a specific department or division for the sole purpose of supervising the operation of the bottling subsidiaries through placement of its employees on the corporate boards of the subsidiaries and by sending specialists to aid management. Pacific's tax returns are prepared at the parent's Atlanta office. 5 OTR Adv Sh at 406-07.

The Coca Cola Company filed returns for the years in question by using the three-factor apportionment formula to determine its Oregon tax liability. This three-factor apportionment formula was explained in *John I. Haas, Inc. v. Tax Com.*, 227 Or 170, 174, 361 P2d 820 (1961):

> "The method adopted by the Commission to apportion income of a foreign corporation so as to accurately reflect income from business within Oregon consisted of determining the average proportion the *corporation's* Oregon property, wages and sales bore to the corporation's total property, wages and sales; and then to use this proportion as the percentage of the *corporation's* total net income which resulted from business done within Oregon. * * *"

Likewise, Pacific determined its Oregon tax by determining the proportion its Oregon property, sales and wages bore to its overall property, sales and wages.

The Department of Revenue ruled that Coca Cola and its wholly owned bottling subsidiaries constituted one unitary business for tax purposes. Therefore, it recomputed Coca Cola's tax by determining the proportion that the Oregon property, sales and wages of Coca Cola and its subsidiaries bore to the overall prop-

erty, sales and wages of Coca Cola and its subsidiaries. It then applied the proportion to the total income of Coca Cola and its subsidiaries. This method of computation increased the tax liability of Coca Cola in that it apportioned more of the net income of Coca Cola and its subsidiaries to Oregon.

The principal issue in this case is whether the income from Coca Cola and its wholly owned subsidiaries may be combined and the apportionment formula applied to the sum to determine the income properly attributable to Oregon. Coca Cola and Pacific have each filed separate tax returns as unitary corporations; that is, as multistate businesses whose Oregon activities are so interconnected with out-of-state activities as to require apportionment by the three-factor formula of property, wages and sales. The Department of Revenue contends that the manufacture of syrup and the other activities of Coca Cola and the bottling activities of its wholly owned subsidiaries constitute one vertically integrated business with the ultimate goal of providing soft drinks to the public. Thus they contend, and the Tax Court agreed, that a combined apportionment accounting method best reflects the income of Coca Cola and its subsidiaries in Oregon.

For the tax years 1963 and 1964 the applicable statute gave the Tax Commission (now the Department of Revenue) the power to permit or require a corporation doing business within and without the state to use either the segregated method① or the apportion-

---

① The segregated method of reporting as applied to a multistate business treats the business activities conducted within the state as separate and distinct from business activities carried on without the state. See Utah Const. & Mining v. Tax Com., 3 OTR 385 (1969), aff'd 255 Or 228, 465 P2d 712 (1970); Wah Chang Corp. v. Commission, 2 OTR 31 (1964).

ment method of reporting. ORS 314.280 (repealed by Or Laws 1965, ch 152, § 22). The law did not favor one method over the other. *Utah Const. & Mining v. Tax Com.*, 255 Or 228, 465 P2d 712 (1970). The taxpayer had the burden of showing that the method employed by the Department was arbitrary and unreasonable. *Utah Const. & Mining v. Tax Comm.*, supra; *Consolidated Freightways v. Tax Com.*, 230 Or 522, 370 P2d 224 (1962).

For the tax years 1965 and 1966 the applicable statute required a taxpayer having business which is taxable both within and without the state to use the apportionment method. ORS 314.615 (Uniform Division of Income for Tax Purposes Act). The only exception existed where the apportionment method did not fairly represent the taxpayer's business activity within the state. ORS 314.670. The use of any method other than the apportionment method was extraordinary and the burden of proof was on the one seeking to invoke the aid of ORS 314.670 and use a nonapportionment formula. *Donald M. Drake Co. v. Dept. of Rev.*, 263 Or 26, 500 P2d 1041 (1972).

The Department of Revenue has interpreted both statutes to provide for the combined apportionment method "[w]here two or more corporations are engaged in a unitary business, a part of which is conducted in Oregon by one or more members of the group." Dept of Rev Reg 314.280(1)-(B); Reg 314.615(B).

Initially, this court must consider the nature of a unitary business and the applicability of that concept to Coca Cola and its wholly owned subsidiaries. Then we must consider whether the combined apportionment method is allowable under the applicable statutes.

In *Butler Brothers v. McColgan,* 17 Cal 2d 664, 111 P2d 334 (1941) aff'd 315 US 501, 62 S Ct 701, 86 L Ed 991 (1942), the California Supreme Court stated the factors to be considered in determining whether a business is unitary or separate in character:

"* * * It is only if its business within this state is truly separate and distinct from its business without this state, so that the segregation of income may be made clearly and accurately, that the separate accounting method may properly be used. Where, however, interstate operations are carried on and that portion of the corporation's business done within the state cannot be clearly segregated from that done outside the state, the unit rule of assessment is employed as a device for allocating to the state for taxation its fair share of the taxable values of the taxpayer [citing authorities]." 17 Cal 2d 667-68.

As stated by Keesling and Warren, *The Unitary Concept in the Allocation of Income,* 12 Hastings J 42, 46 (1960):

"When the properties and activities within the jurisdiction are an inseparable portion of a business carried on within and without the jurisdiction, the computation on the income attributable thereto requires a computation of the income of the business as a whole or as a unit and an apportionment or allocation of the total to the various parts. This necessity of dealing with the business as a *unit* taking into account income from property and activities without the jurisdiction as well as within, gives rise to the classification of the business as a unitary business. Thus a unitary business may be defined simply as any business which is carried on partly within and partly without the taxing jurisdiction." (Emphasis in original.)

*See John Deere Plow Co. v. Franchise Tax Bd.,* 38 Cal 2d 214, 238 P2d 569 (1951). *See also* Lavelle, *What*

*Constitutes a Unitary Business,* 25 Major Tax Planning (So Cal Tax Inst) 239 (1973).

██ The test for determining whether a multistate business is unitary was stated in *Zale-Salem, Inc. v. Tax Com.,* 237 Or 261, 265, 391 P2d 601 (1964):

> "* * * 'If the operation of the portion of the business done within the state is dependent upon or contributes to the operation of the business without the state, the operations are unitary; otherwise, if there is no such dependency, the business within the state may be considered to be separate.'" [Quoting from *Edison California Stores v. McColgan,* 30 Cal 2d 472, 481, 183 P2d 16, 21 (1947)].

In applying the "dependent upon or contributes to" test to the instant case we must keep in mind the admonition in *Hines Lumber Co. v. Galloway,* 175 Or 524, 538, 154 P2d 539 (1944) that "[n]ormally, a determination as to the character of the ventures conducted by a corporation that is, whether they were unitary or otherwise in nature, is a question of fact and not of law."[2]

In challenging the designation of Coca Cola and its subsidiaries as one unitary operation, Coca Cola points out that Pacific Coca Cola does not stand in a significantly different relationship with Coca Cola than do the independently owned bottling companies. As noted above, 90 percent of Coca Cola's sales of syrup

---

[2] *An older test, which has occasionally been used in this state, holds that a multistate business is unitary if there is unity of ownership, unity of management and unity of operation. Butler Bros. v. McColgan, 17 Cal 2d 664, 111 P2d 334 (1941), aff'd 315 US 501, 62 S Ct 701, 86 L Ed 991 (1942). See also U.S. Tobacco Co. v. Tax Com., 229 Or 627, 636, 368 P2d 337 (1962); Humble Oil & Refining Co. v. Dept. of Rev., 4 OTR 284, 292 (1971). While these "unities" may be important in determining the true nature of a multistate business, we agree with the Tax Court that, as a test, the unities concept is ambiguous and of little assistance. See Keesling and Warren, The Unitary Concept in the Allocation of Income, 12 Hastings J 42, 47 (1960).*

and 95 percent of its total sales are made to independents. Pacific makes its purchase of syrup at the same price as do the independents.

The facts in this case indicate that both the independents and the subsidiaries were subject to extensive controls by Coca Cola. Both were wholly dependent on Coca Cola for the supply of syrup. Neither could sell products that were substitutes for or imitations of Coca Cola. Strict quality controls were imposed upon all bottlers. Advertising of the final product was primarily handled by Coca Cola. Equipment and packaging were controlled by Coca Cola. And neither the independents nor subsidiaries could change their territory without the approval of Coca Cola.

Thus it appears that both the independent bottlers and the wholly owned subsidiaries are dependent upon and contribute to Coca Cola's multistate operations. And were it not for the fact that the independent bottlers are independently owned, they, too, would constitute part of Coca Cola's unitary business.

■ We agree with the Tax Court that "the bottling operation of the corporate subsidiary [is] so inextricably connected to the parent syrup-producing corporation that to state that the profits of one were not dictated by the operations of the other would be inconceivable." 5 OTR Adv Sh at 434. Indeed, Coca Cola appears to have conceded this fact in its brief in the instant case:

> "Despite the fact that the bottling industry has developed and is sustained independently from the manufacture of the syrup, that part of the bottling industry which is represented by subsidiaries of plaintiff is, at least functionally, integrated with that part of plaintiff's syrup business which supplies its bottling subsidiaries. To that extent plain-

tiff and its bottling subsidiaries, including Pacific, may logically be held to be dependent upon and contribute to the success and profits of each other, thereby meeting the preferred test of unity adopted by the Tax Court."

■ We must now decide whether the fact that Coca Cola and its wholly owned subsidiaries are organized as separate corporate entities precludes the Department of Revenue from combining their incomes to reflect the true character of their unitary business. We hold that it does not.

Combined reporting is well described by Keesling in a recently published article, "A Current Look at the Combined Report and Uniformity in Allocation Practices," 42 J Taxation 106 (Feb 1975):

> "Simply stated, the purpose of the combined report is to insure that the income of a business conducted partly within and partly without the taxing state shall be determined and apportioned in the same manner regardless of whether the business is conducted by one corporation or by two or more affiliated corporations. In cases where the business is conducted by one corporation, the income is computed as a unit and apportioned by means of an appropriate formula, usually the three-factor formula of property, payroll, and sales. * * *

> "When the combined report is employed, exactly the same procedure is followed, and the same results obtained, in cases where the business is conducted by more than one corporation. The income is still computed as a unit just as it would be if the business had been conducted by one corporation only."

*See also* Rudolph, *State Taxation of Interstate Business: The Unitary Business Concept and Affiliated*

*Corporate Groups,* 25 Tax L Rev 171 (1970); Keesling and Warren, supra 12 Hastings J at 57.[9]

In *Zale-Salem, Inc. v. Tax Com.,* supra, this court approved the use of combined reporting under ORS 314.280 (the tax statute applicable in the instant case to the tax years 1963 and 1964). In that case the court dealt with two Oregon stores, each a separate corporation and each a wholly owned subsidiary of a Texas corporation:

> "* * * Indeed, were it not for the existence of a separate corporate entity for each store, there would be no question at all that this is an integrated business, about as fully so as it is possible to be. It is, therefore, necessary to decide if the existence of a corporate shell precludes the commission from requiring the use of an apportionment formula." 237 Or at 263-64.

In *Zale-Salem* the court adopted the reasoning of the California Supreme Court in the case of *Edison California Stores v. McColgan,* 30 Cal 2d 472, 183 P2d 16 (1947). In *Edison California Stores* the court expanded upon the unitary business concept developed in *Butler Bros. v. McColgan,* supra. The court pointed out that *Butler Bros.* involved only one corporation whereas they dealt with multiple corporations:

> "* * * The business of the parent and all of its subsidiaries is owned and managed under one centralized system, to the same extent as in the Butler Brothers case and other cases considered therein. Thus the business is unitary regardless of the fact that in the Butler Brothers case there was but one corporation involved, owning as parts of the unitary system seven different branches in as many states, and that in the present case there is a

---

[9] For a discussion of the increased use of combined reporting, *see* Peters, *Use of Combined Reporting Required by Increasing Number of States,* 41 J Taxation 375 (1974).

parent corporation owning and controlling as units of one system fifteen different branches organized as corporations in as many states. *No difference in principle is discernable. If the crux of the matter is to ascertain that portion of the business which is done within this state, then the same considerations justify the use of the formula allocation method in the one case as in the other.*" 30 Cal 2d at 480. (Emphasis added.)

However, Coca Cola contends that, with regard to the tax years 1965 and 1966, the legislature changed the applicable statute to give priority to the apportionment method of reporting. They contend that combined reporting is contrary to the apportionment method set out in the statute.

We disagree. The combined method of apportionment reporting is wholly consistent with, and a natural extension of, the apportionment method. While it is true, as plaintiff points out, that the statute speaks of taxpayer in the singular, this is no bar. We note that the prior statute also spoke in the singular. Yet in *Zale-Salem* we approved combined reporting.[4]

The question is fundamentally one of whether a business should stand in a better position for purposes of determining income merely because it chooses to use a multiple corporation organizational scheme. We do not feel that it should. We agree with the following statement of the California Supreme Court:

"* * * [A]ccepting as we must, the application of the law to unincorporated wholly-controlled

---

[4] Keesling, in his article in 42 Journal of Taxation, *A Current Look at the Combined Report and Uniformity in Allocation Practices* at 109 (1975), states "* * * the fact that the Uniform Act does not specifically require [the combined method of reporting for a multicorporate business] constitutes no barrier to its adoption by the Multistate Tax Commission and the various member states."

branches or businesses located in other jurisdictions as set forth in Butler Brothers v. McColgan, 17 Cal. 2d 664 [111 P.2d 334], 315 U.S. 501 [62 S.Ct. 701, 86 L.Ed. 991], the conclusion is irresistible that the same rule should apply to incorporated wholly-controlled branches or businesses so located. * * *" *Edison California Stores v. McColgan,* supra at 473-74.

We agree with the Tax Court and the Department of Revenue that plaintiff and its wholly owned bottling subsidiaries, including Pacific, are all part of the same unitary operation and were required to use the combined method of reporting for the tax years in question.

Affirmed.