# IN THE OREGON TAX COURT

## CHINOOK INVESTMENT COMPANY
*v.*
## DEPARTMENT OF REVENUE
(TC 2181)

Lee A. Hansen, Brown & Hansen, Portland, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered December 6, 1985.

**CARL N. BYERS, Judge.**

This case concerns the application of Oregon's Uniform Division of Income for Tax Purposes Act to plaintiff's corporate excise and Multnomah County business income tax for the years 1979, 1980 and 1981. The case has been submitted to the court on briefs, resting on the following stipulated facts:

"The Chinook Investment Company is an Oregon corporation engaged in the investment business which has both real estate and securities in its holdings.

"Until 1975 it owned no real property outside of Oregon. In 1975 it acquired an improved property in Pasco, Washington which had an unexpired lease with Payless Drug Store on a triple net lease. A triple net lease means that Payless Drug Stores pays all expenses of owning the property such as taxes and insurance including repairs, taxes and maintenance.

"The purchase was made by borrowing from private sources on the credit of Chinook Investment Company by unsecured notes and cash and by Chinook assuming an existing mortgage. The mortgagor allowed Chinook Investment Company to assume the mortgage based upon the credit of Chinook Investment Company, and the value of the real property subject to the mortgage.

"The company office is located in Portland, Oregon. The company has triple net leases in Oregon on real property in Beaverton, Lents and Bend.

"In the records of plaintiff the receipts from the Pasco, Washington property and the expenses attributed to that property were separately accounted for and reported separately in the excise tax returns of plaintiff. No administration expenses were allocated to the Pasco, Washington property because of the minimal administrative expenses attributable to that property, but an accurate allocation was possible."

The issue raised by these facts is whether plaintiff may use separate accounting to determine its income for Oregon for its corporate excise and Multnomah business income tax. Resolution of the issue must begin with the statutes found in ORS 314.605 through 314.695. The general requirement for apportionment is found in ORS 314.615, which provides:

"Any taxpayer having income from business activity which is taxable both within and without this state, other than activity as a financial organization or public utility or the rendering of purely personal services by an individual, *shall* allocate and apportion his net income as provided in ORS 314.605 to 314.675. Taxpayers engaged in activities as a financial organization or public utility shall report their income as provided in ORS 314.280 and 314.675." (Emphasis added.)

By this statute, the legislature has established a priority or preference for apportionment as opposed to separate accounting. *Donald M. Drake Co. v. Dept. of Rev.,* 263 Or 26, 500 P2d 1041 (1972). It may be that ORS 314.670 does not

apply to plaintiff by virtue of the fact that plaintiff appears to be an investment company. Investment companies are included in the definition of "financial organization" contained in subsection (4) of ORS 314.610. As a financial organization, plaintiff must report its income as provided in ORS 314.280 and 314.675.

■ ORS 314.280, which pertains to financial organizations or public utilities, does not, by its terms, prefer the apportionment method over the segregated method of reporting. However, the statute authorizes the Department of Revenue to promulgate regulations governing the methods to be used.[1] The department has promulgated regulations which require the apportionment method. This result flows from OAR 150-314.280-(C) which adopts, by reference, the regulations promulgated under ORS 314.615 and 314.620. In fact, the first paragraph of OAR 150-314.615-(D) is simply a restatement of ORS 314.670.[2] Thus, the regulations require the taxpayer to apportion his income unless he can show that the apportionment method is unfair.

Plaintiff claims two grounds for using the segregated method. First, plaintiff claims that it is not a unitary business. Second, plaintiff asserts that even if it is unitary, the apportionment method does not fairly or accurately reflect the business done in Oregon.

---

[1] ORS 314.280 provides:

"(1) If a taxpayer has income from business activity as a financial organization or as a public utility (as defined respectively in ORS 314.610(4) and (6)) which is taxable both within and without this state (as defined in ORS 314.610(8) and 314.615), the determination of net income shall be based upon the business activity within the state, and the department shall have power to permit or require either the segregated method of reporting or the apportionment method of reporting, under rules and regulations adopted by the department, so as fairly and accurately to reflect the net income of the business done within the state.

"(2) The provisions of subsection (1) of this section dealing with the apportionment of income earned from sources both within and without the State of Oregon are designed to allocate to the State of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. Any taxpayer may submit an alternative basis of apportionment with respect to his own income and explain that basis in full in his return. If approved by the department that method will be accepted as the basis of allocation."

[2] OAR 150-314.615-(D) provides:

"Where the taxpayer's Oregon business activities are a part of a unitary business carried on both within and without the state, use of the apportionment method is mandatory to determine the portion of the unitary net business income attributable to Oregon."

The "unitary" issue in state taxation is a legal salad of uncertainty garnished with inconsistency.[3] Because the states have "wide latitude" in determining the hows and whens of apportionment, similar cases may be found spread across a spectrum of decisions. Some general tests have been developed by courts, such as centralized management and centralized purchasing (*Butler Bros. v. McColgan,* 17 Cal 2d 472, 664, 111 P2d 334 (1941), *affirmed* 315 US 501, 62 S Ct 701, 86 L Ed 991 (1942)), or interdependence (*Edison California Stores, Inc. v. McColgan,* 30 Cal 2d 472, 183 P2d 16 (1947)). However, no general rule seems to fit all cases because the question is, by its nature, a question of fact and not of law. *Coca Cola Co. v. Dept. of Rev.,* 271 Or 517, 533 P2d 788 (1975). In Oregon, the Supreme Court, in *Zale-Salem, Inc. v. Tax Com.,* 237 Or 261, 391 P2d 601 (1964), applied a "dependent upon or contributes to the operation of" test while in *Coca Cola Co. v. Dept. of Rev., supra,* the court looked at the extensive controls exerted by the parent, as well as the dependence of the subsidiaries. Perhaps more relevant is the more recent case of *Ash Grove Cement Co. v. Dept. of Rev.,* 7 OTR 6 (1977), which construed Oregon's UDITPA regulations to determine whether the taxpayer's business is a single trade or business. OAR 150-314.615-(E). That regulation contains three tests or points which were applied by the court. Those tests are: (1) Same type of business, (2) steps in a vertical process and (3) strong centralized management. Applying the first test, although the companies were literally the same type of business, this court found that the test was not met because of differences in geographical location, source and ownership of supply, different customers and similar circumstances. The second test was not relevant and the court found that there was not strong centralized management in applying the third test. Consequently, the court, in that case, found that the Oregon plant should be treated as a separate business and not part of a unitary business.

Plaintiff asserts that the Washington property is operated separately, is not dependent on or contributing to the Oregon property, and that the income and expenses of the

---

[3] Dexter, *The Unitary Concept in State Income Taxation of Multistate-Multination Businesses,* 10 Urban Lawyer 181, 193 (1978).

Washington property can be separately accounted for. Plaintiff contends that *Ash Grove Cement Co., supra,* and other Oregon cases support its position.

The stipulation of facts indicates that plaintiff is an investment company engaged in the investment business involving both real estate and securities. While the stipulation of facts contains no discussion of the nature of plaintiff's business, the very terms used, of necessity, entail the obtaining of funds to invest, investigation and evaluation of possible investment, selection and acquisition of investments, review and evaluation of current holdings, administration or management of holdings, consideration of sale, trade or other disposition, and the accounting and distribution of profits. From this very brief description of the business of investing, it is apparent that two factors are critical to such a business' success. First, the policy decisions of when and what to buy or sell. Second, the credit reputation or financial ability which permits the business to obtain funds to invest.

When analyzed in this light, plaintiff's Washington investment is not a separate business. The Washington property is only one of plaintiff's investments which must have been evaluated and presumably continues to be administered and evaluated by the Oregon office. There is nothing in the stipulation of facts to suggest that the property is separately managed by persons outside Oregon. To put it in more traditional terms, it is subject to the centralized management of the company.

Perhaps most critical for an investment company is the fact that the Washington property does not have a separate credit reputation or financial ability. There is interdependence to the extent that plaintiff's ability to operate, to obtain new funds, to negotiate new purchases or assume new mortgages depends upon the value and status of the Washington property. Likewise, the income received from the investment in Washington *as an investment* is attributable in part to the Oregon resources of plaintiff which enabled it to borrow from private sources on its credit by unsecured notes and to assume the existing mortgage. The Washington property may be likened to a college freshman. That is, it may be off on its own but it is not independent. The Washington property is not a

business but a passive investment. Consequently, the interdependency-of-operation test which plaintiff argues for is not applicable. The property is not the trade or business. The trade or business in question is the holding or owning of an investment. In the operation of that business, the Washington property is an integral part of the Oregon business.

Plaintiff also claims that even if it is a unitary business, the apportionment method does not "fairly reflect" the extent of its business in Oregon. There are no facts in the stipulation submitted to the court or anywhere else in the record by which to judge this claim. The very fact that the issue is disputed in this court is a basis for assuming that the apportionment method results in a greater tax than the segregated method. How much greater, or whether the difference is sufficient to not "fairly reflect" the Oregon business cannot be determined from the facts before the court. In the absence of any facts, the court must deny plaintiff its claim for failure of proof.

Based upon the above, the Opinion and Order No. MBI 84-004 of the Department of Revenue is sustained. Costs to neither party.