# IN THE OREGON TAX COURT

## COX CABLEVISION CORPORATION
*v.*
## DEPARTMENT OF REVENUE
(TC 3003)

Roy E. Crawford, Brobeck Phleger & Harrison, San Francisco, California, represented plaintiff.

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered June 10, 1992.

### CARL N. BYERS, Judge.

Plaintiff is one of many affiliated corporations whose ultimate ownership lies with the Cox family.[1] Upon audit, defendant concluded that plaintiff was part of a unitary business and assessed taxes and interest for the years 1977 through 1985. Plaintiff appeals from defendant's Opinion and Order No. 85-4374 which upheld the assessments.

Although the parties were unable to agree to all the facts and a trial was had, most of the salient facts are undisputed.[2] The dispute arises from the characterization of the facts and their legal implications.

## CORPORATE ORGANIZATION

Cox Communications, Inc. (Cox Communications) is the parent corporation.[3] Like a fishing boat, this corporation has lines of businesses stretching out through subsidiary corporations. The four main lines meriting discussion are:

---

[1] James M. Cox, a former Ohio governor and a 1920 presidential candidate for the Democratic Party purchased his first newspaper in 1898 and his first broadcasting station in 1934. The Cox family entered the cable television business in 1962.

[2] Defendant introduced little evidence at the trial and relied primarily upon plaintiff's admissions and other undisputed facts.

[3] For the sake of simplicity and clarity, the court will ignore the name changes that took place during the years involved. The court will also ignore the business activities such as publishing and cellular telephone which, because of their relative size or short duration, do not merit independent consideration.

(1) broadcasting, both radio and television; (2) cable television; (3) auto auction; and (4) motion picture production.

The broadcasting line, with a number of subsidiaries, runs directly to the parent. The cable television line has a large number of subsidiary corporations, some of which are only partly owned by the Cox family. The head of the cable line is Cox Cable Communications, Inc. (Cox Cable) which, in turn, is a wholly owned subsidiary of Cox Communications. The auto auction line also operates primarily under an auto auction parent, the Mannheim Corporation, which, in turn, is a wholly owned subsidiary of Cox Communications. This line is substantially shorter than the prior two. The fourth line, which is the shortest of all, consists of a single corporation, Bing Crosby Productions, Inc.

## COX COMMUNICATIONS

Cox Communications provides certain administrative support for all of its lines of businesses. This support is primarily in the form of administrating a pension fund, insurance and providing internal audits. Each business line is billed for services provided. These services require only a limited staff. In March, 1980, there were 27 corporate employees providing administrative services for the companies' 4,900 employees. By March, 1983, this had grown to 70 employees serving 7,200 employees.

To avoid personal holding company status for federal income tax purposes, Cox Communications had to own an operating business. Consequently, it owned and operated the Atlanta, Georgia, radio and television stations. Cox Cable, parent of the cable television line, also faced the same problem and solved it by operating the Macon, Georgia, cable television system.

During most of the years involved, Cox Communications also provided data processing for its subsidiaries through Cox Data Systems, another wholly owned subsidiary.[4] The cable television line was the biggest customer of Cox Data Systems, which provided billing of cable television

---

[4] Cox Cable took over the cable operations data processing functions from Cox Data Systems in 1983.

subscribers. Cox Data Systems also provided the broadcasting line with certain services but to a far lesser extent. Whenever Cox Data Systems provided services, they billed the subsidiary for those services.

## LINES OF BUSINESS

Except for financing and administrative services, each line is run as a separate business. For example, Cox Cable and its subsidiaries are operated as a cable television conglomerate. Cox Cable provides accounting and financial reports for all of the cable subsidiaries. Likewise, training, personnel,[5] payroll records, inventory control, credit and collection, advertising, marketing information and research and purchasing are all performed for the line of business or for part of a line of business.

The primary exception to each line operating as a separate business is financing. Cox Communications maintains control and provides financial resources for all of its lines. Thus, although each business is required to develop its own budget, those budgets have to be submitted to the parent for approval. Capital expenditures over $1,000,000 require specific parent approval. The parent finances subsidiary loans, either by borrowing from third party lenders or from its earnings and cash flow. Since the parent's credit is significantly better than the Cable Division, Cable Division is able to borrow at two percentage points less than it could borrow from third party lenders on its own.

The financial control impacts some of the operations of the subsidiaries. For example, in 1984, the parent decided to decentralize the management of cable. As a part of that decision, a committee composed of the parent's president, the parent's vice president in charge of cable and the parent's vice president in charge of finance was formed and authorized to dispose of portions of the cable system.[6] As an additional example, the parent occasionally guaranteed cable television performance under indemnity agreements, promissory notes, franchise applications and buy and sell agreements.

---

[5] Until 1991 there were no centralized personnel records.

[6] Management determined that it could not efficiently decentralize their smaller cable systems.

Defendant's auditor initially included all four lines as part of the unitary business. However, in auditing the second portion of the years involved, the auditor concluded that only the broadcasting and cable television businesses were unitary. Defendant denies that it agrees auto auction and the movie production businesses should be excluded as parts of the unitary business. Defendant contends it merely "decided to reduce the complexity and length of trial by dropping the non-Cable and non-Broadcasting operations as issues * * *."

## ISSUE

As formulated by the positions of the parties, the issue before the court is whether broadcasting and cable television constitute a unitary business.

## THE LAW

■ During 1977-85, defendant had the authority to require "affiliated corporations" to file a combined report when such affiliated corporations were part of a unitary group of affiliated corporations. ORS 314.363(1).[7] The statute describes when an affiliated corporation is part of a unitary group:

> "An affiliated corporation is a part of a unitary group when it is engaged in business activities which are integrated with, dependent upon, or which contribute to the business activities of the group as a whole, and the business activities of the group are carried on and are taxable in more than one state." ORS 314.363(3).

■ The department promulgated OAR 150-314.363-(B), which provided that the term "business activities of the unitary group" has the same meaning as "trade or business" as used in OAR 150-314.615-(E). We thus turn to OAR 150-314.615-(E) to determine when a taxpayer has more than one trade or business. OAR 150-314.615-(E) states:

> "In general, the activities of the taxpayer will be considered a single business if there is evidence to indicate that the divisions under consideration are integrated with, dependent

---

[7] All citations to the Oregon Revised Statutes and Oregon Administrative Rules are to the 1981 Replacement Part.

upon or contribute to each other and the operations of the taxpayer as a whole."

The rule goes on to list three factors which create a "strong presumption" that the activities constitute a single trade or business. Those factors and the court's application of them to this case follow.

■ 1. *"Same Type of Business."* Defendant contends that broadcasting and cable television are the same type of business. Plaintiff's broadcasting operations include radio as well as television. It appears that defendant believes all "telecommunications" businesses are of the same type. The court disagrees. The technology involved in radio and television broadcasting is significantly different from that involved in cable television. Also, broadcasting obtains most of its revenues from advertising, while cable television obtains most of its revenues from subscriber charges and fees. The court sees significant differences between the two types of businesses in terms of customer base, employee skills, marketing, licensing and operation. If anything, cable television has more similarities with a telephone system, which also involves telecommunications. The court finds that broadcasting and cable television are not the same type of business.

2. *"Steps in a Vertical Process."* This factor requires no discussion since it is obvious that it is not applicable in this situation.

3. *"Strong Centralized Management."* This is the area of prime contention. Accordingly, it is appropriate to consider defendant's rule in full. The rule states:

"(3) *Strong centralized management.* A taxpayer which might otherwise be considered as engaged in more than one trade or business is properly considered as engaged in one trade or business when there is a strong central management, coupled with the existence of centralized departments for such functions as financing, advertising, research, or purchasing. Thus, some conglomerates may properly be considered as engaged in only one trade or business when the central executive officers are normally involved in the operations of the various divisions and there are centralized offices which perform for the divisions the normal matters which a truly independent business would perform for itself, such as

accounting, personnel, insurance, legal, purchasing, advertising, or financing."

OAR 150-314.615-(E)(3).

## COMMENTS ON THE RULE

■■ It is appropriate to place the rule in context. The state's jurisdiction to tax is limited. The state may tax a business which operates both within and without its boundaries. The concept of a "unitary business" applies to affiliated corporations as well as to individual taxpayers. *Coca Cola Co. v. Dept. of Rev.*, 271 Or 517, 528, 533 P2d 788 (1975). The concept assumes it is impractical to obtain an accurate measure of income for the various parts of an interstate business for purposes of taxation. The degree of integration or unity determines whether the business is unitary. That, of course, is the dispute here.

■ What we are looking for is functional integration, centralization of management and economies of scale. *See Mobil Oil Corp. v. Commissioner of Taxes*, 445 US 425, 438, 100 S Ct 1223, 63 L Ed 2d 510 (1980) (citation omitted). Also, in *Container Corp. of America v. Franchise Tax Board*, 463 US 159, 166-67, 103 S Ct 2933, 77 L Ed 2d 545, 554 (1983), the Court stated:

"In addition, the principles we have quoted require that the out-of-state activities of the purported 'unitary business' *be related in some concrete way to the in-state activities*. The functional meaning of this requirement is that there be some sharing or exchange of value not capable of precise identification or measurement—beyond the mere flow of funds arising out of a passive investment or a distinct business operation—which renders formula apportionment a reasonable method of taxation." *Id.* at 166. (Emphasis added.)

The Court further indicated:

"A final point that needs to be made about the unitary business concept is that it is not, so to speak, unitary: There are variations on the theme, and any number of them are logically consistent with the underlying principles motivating the approach." *Id.* at 167.

■ OAR 150-314.363-(E)(3) is one variation on the theme. It requires "strong" central management, as opposed to weak or loose central management. In addition, it requires

strong central management to be "coupled with" centralized departments. Like most descriptions in this area, the rule must be viewed as a guide, not some inflexible standard. The picture it draws is consistent with the traditional "functional integration, centralization of management and economies of scale" test.

## FINDINGS

■ Management for cable is centralized in Cox Cable. In fact, it appears that management for each line of business is separate. Cox Communication's centralized financing and financial control does not equate to "strong" centralized management. While the directors of Cox Communications may make major policy decisions and even decide which cable television systems to sell or purchase, operational management of the cable television line is not integrated with management of the broadcasting line.

■ Defendant sees a flow of value to Cox Communications from the cable business. The opposite appears to be true. Due to its good credit standing, the parent can borrow money from third party lenders for less interest than Cox Cable could alone. This enables parent to lend to Cox Cable at a lower rate, thereby increasing Cable's income. The only flow of value from Cox Cable to the parent is in the increased value of Cox Cable. However, this is not the kind of flow of value intended by the Supreme Court. If it were, every conglomerate would be unitary.

■ ■ Defendant's emphasis on financial management is disproportionate to the other factors that need to be considered. Just as decentralization of day-to-day management cannot defeat a unitary finding, *see Container Corp. of America v. Franchise Tax Board*, 463 US 159, 180 n 19, 103 S Ct 2933, 77 L Ed 2d 545 (1983), neither can centralization of management alone make it unitary. The objective is not to tax *any* affiliated corporation for which the state may find some linkage, but to treat fairly a functionally integrated enterprise. While centralized financing is a factor to consider, it is a nonoperating function and should receive less weight.

> "Consequently, the nonoperating functions of an enterprise, relied on in *Superior Oil*, although centralized, ought not lay the basis for holding the enterprise unitary. Not only

is there no reason in the considerations which gave birth to formulary apportionment to push the technique to this point, but perhaps of greater moment is the fact that so broad a sweep of formulary apportionment tends to push distortion and misallocation to unacceptable levels." Jerome R. Hellerstein, Corporate Income and Franchise Taxes, ¶ 8.11[5][a] at 441 (1983).

The financial control exercised by the parent in this case does not appear designed to make cable television an integrated part of the whole. Rather, it appears designed to merely maximize the benefits to cable television as a separate business.

■ Defendant asserts that the flow of financial services and capital demonstrate functional integration. In *F. W. Woolworth Co. v. Taxation and Revenue Department*, 458 US 354, 102 S Ct 3128, 73 L Ed 2d 819 (1982), the Supreme Court reversed the New Mexico Supreme Court after the state court had used similar logic. The Court pointed out that this kind of reasoning would "trivialize" the due process limitation. It indicated that the test is not whether some economic benefit is derived but whether there is an " 'underlying unity or diversity of business enterprise.' " *Id.* at 363 (quoting *Mobil Oil Corp. v. Commissioner of Taxes*, 445 US 425, 440, 100 S Ct 1223, 63 L Ed 2d 510 (1980)).

There are no transfers of services or goods between broadcasting and cable. What might be viewed as a natural symbiotic relationship between broadcasting and cable does not exist. That is, one could surmise significant benefits could be realized from the exchange of programming services and information. Such benefits are nonexistent.

## CONCLUSION

The court finds that broadcasting is not "related in some concrete way" to plaintiff's cable activities in Oregon. More specifically, Cox Communications may not be properly considered as engaged in only one trade or business. The parent's executive officers are not normally involved in the operations of the various divisions. The business affinity of broadcasting and cable television is only a surface impression. The two lines of businesses are not unified to the degree required to be treated as a single business.

Defendant advances a "box-in" argument. Defendant argues that if the broadcasting line is not unitary with the cable line, then the cable line itself is not a unitary business. In advancing this argument, defendant ignores its own rule. Cable has strong centralized management and centralized departments. These characteristics result in a flow of value between the cable subsidiaries which is not subject to precise measurement. Accordingly, the court finds that plaintiff Cox Cablevision is part of a unitary business headed by Cox Cable Communications, Inc.

Based on the above findings, the court will enter judgment setting aside defendant's opinion and order and directing adjustments to plaintiff's tax liabilities in accordance with the findings of the court. Plaintiff to recover costs.