No. 8 August 17, 2018 107

## IN THE OREGON TAX COURT
## REGULAR DIVISION

Thomas M. COOK,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant.*

(TC 5298)

Plaintiff (taxpayer) appealed to the Magistrate Division and petitioned for Special Designation to the Regular Division of the Tax Court regarding income apportioned to Oregon based on his distributive share from Pass-Through Entities (PTEs) operating either exclusively or partially in Oregon. Taxpayer, a nonresident individual, did not include any distributive share resulting from the PTEs with no operations in Oregon. Defendant (the department) audited taxpayer's return and determined that taxpayer's income should be apportioned after considering and combining the operations of *all* the PTEs, including the entities that had no Oregon source income. Parties proceeded on partial stipulated facts and cross-motions for partial summary judgment. Granting taxpayer's and denying the department's motion, the court ruled that pursuant to the text of the partnership tax statutes, the context of those statutes (especially the provisions of the PTE statutes and rules) along with the history of combined reporting in Oregon and the text and context of UDITPA, taxpayer's return as to apportionment was proper and that none of the relevant rules or statutes were consistent with the department's position in the case—a position requiring what was essentially combined reporting and apportionment at the owner level.

Submitted on cross-motions for partial summary judgment.

Robert T. Manicke, Stoel Rives, LLP, Portland, submitted the motion and argued the cause for Plaintiff (taxpayer).

Darren Weirnick, Senior Assistant Attorney General, Department of Justice, Salem, submitted the cross-motion and argued the cause for Defendant Department of Revenue (the department).

Decision rendered for Plaintiff (taxpayer) on August 17, 2018.

**HENRY C. BREITHAUPT, Senior Judge.**

## I.   INTRODUCTION

This individual income tax matter is before the court on cross-motions for partial summary judgment. Plaintiff (taxpayer) and Defendant (the department) have filed a partial stipulation of facts and have also stipulated, solely for the purposes of these motions, one matter that will be discussed in due course. The tax years are 2011 and 2012.

## II.   FACTS

Taxpayer is a nonresident of the state of Oregon. He is, directly or indirectly, a member in several limited liability companies that are treated under Oregon law as partnerships. Taxpayer is also a shareholder in one entity that is a Subchapter S corporation for purposes of Oregon law. Where no distinction between the partnerships and the Subchapter S corporation is necessary, these entities are referred to as Pass-Through Entities (PTEs).

In no instance is taxpayer's interest in a PTE, directly or indirectly, in excess of 50 percent, although in several his interest is equal to 50 percent. For the years at issue, some of the PTEs had operations solely in Oregon, and some PTEs had income from operations in Oregon and at least one other state. Several PTEs filed Oregon partnership returns. Some of the PTEs had no operations in Oregon and no resident partners in Oregon. Accordingly, under ORS 314.724,[1] they filed no Oregon partnership returns and the department does not assert that they should have done so.

Although the matter may be ultimately disputed, for purposes of these motions the parties agree that "the court may assume that the Pass-Through Entities were part of a single trade or business and that Plaintiff materially participated in that business." The court notes that the term "single trade or business" is not statutorily defined for PTEs, and the parties do not invoke any statute or rule of the department to define that term. Nonetheless, based

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to the 2011 edition.

on the introductory language of paragraph 16 of the Joint Stipulation of Facts, the court understands the stipulation to mean that the business activities of the PTEs were "unitary" in nature—with the further meaning that, for purposes of these motions, the business activities of the PTEs were integrated with, dependent upon, or contributed to one business for tax purposes, carried on by the PTEs collectively. ("The parties disagree about whether the Pass-Through Entities were part of a unitary business and the nature of Plaintiff's relationship with any unitary business.")

Taxpayer reported and apportioned income to Oregon based on his distributive share from the PTEs operating either exclusively or partially in Oregon. However, he did not include any distributive share resulting from the PTEs with no operations in Oregon. The department audited taxpayer's return and determined that taxpayer's income should be apportioned after considering and combining the operations of *all* the PTEs, including the entities that had no Oregon resident partner or Oregon source income.

## III.   ISSUE

Did the department have authority under the statutes to determine the Oregon income tax liability of taxpayer as it did?

## IV.   ANALYSIS

The parties are in agreement that where a PTE has operations in more than one state, the general concept of apportionment of a base of business income among geographic locations is appropriate and to be accomplished using the rules of the Uniform Division of Income for Tax Purposes Act (UDITPA). *See* ORS 314.605 - 314.675. For the years at issue, apportionment under UDITPA was done according to a single factor, the sales factor specified in ORS 314.650.[2] The parties are separated by their views on the level—entity or owner—at which the apportionment is to be

---

[2] Apportionment is the primary way of addressing the concern, under the U.S. Constitution, about multiple tax burdens being imposed on businesses operating in interstate commerce. For the years at issue, apportionment applies to business income whereas allocation applies to nonbusiness income. All income in question in this case is business income.

done. They are also separated as to what business income base is to be apportioned when a group of PTEs engage in a unitary business.

The PTEs here are all treated as partnerships for federal and Oregon income tax purposes, with one exception. One entity is a Subchapter S corporation. *See* ORS 314.730(2). The federal and Oregon treatment of partnerships and Subchapter S corporations is, for purposes of the analysis of this case, the same except when specifically noted otherwise in this order. Accordingly, the discussion will be of partnership rules with specific reference to rules for Subchapter S corporations only where a material difference, if any, exists. Entities will be referred to as PTEs. Partners or Subchapter S shareholders will be referred to as "owners." Whenever apportionment is discussed, it is assumed that the PTE or group of PTEs being discussed conducted business in Oregon and one or more other states.

Taxpayer argues that the statutes on taxation of PTEs and nonresident owners in ORS 314.712 to 314.727, ORS 314.775 to 314.784, and ORS 316.124 to 314.127 call for apportionment of the income of each PTE at the PTE level, when apportionment is required.[3] In the view of taxpayer, under ORS 316.124(5), the portion of an owner's federal distributive share of income or loss from a PTE to be included in the return of a taxpayer as Oregon source income is calculated at the level of each PTE. All that then remains to be done is to prepare the Oregon return for the owner by adding up the Oregon source distributive shares and other Oregon source income or loss from other sources, if any, and then compute the taxpayer's tax liability. Taxpayer argues that, even if the PTEs in question conduct a unitary business, no combination of incomes at either the entity level or combination of federal distributive shares at the owner level is authorized.[4] The position of taxpayer results in taxpayer computing Oregon tax liability without regard to the federal

---

[3] All statutory provisions are ultimately employed for the purpose of determining the base of income that, for nonresidents, is taxable in Oregon under ORS 316.037(3).

[4] Such a combination would be done to determine a base number to be apportioned. That base number would then be apportioned under UDITPA.

distributive share of taxpayer in PTEs that do no business in Oregon, even if such PTEs are in a unitary relationship with one or more PTEs that do carry on business in Oregon.[5]

The department argues that when a group of PTEs, in each of which a nonresident is an owner, conduct a unitary business, it may compute the Oregon source income or loss of the nonresident as follows:[6]

(1) First, the several federal distributive shares of income or loss of the

(2) nonresident in all PTEs in the group, even those not doing business

(3) in Oregon, are aggregated for that particular owner.

(4) Second, apportionment of the aggregate income or loss number is then

(5) computed at the owner level for that owner. The apportionment

(6) ratio is computed as follows: The numerator of the ratio is the aggregate

(7) of the owner's share of Oregon sales, if any, of each of the PTEs in the group. The denominator of the ratio is the aggregate of the taxpayer's share of total

(8) or "everywhere" sales of each of the PTEs in the group. The ratio is

(9) expressed as a percentage.

(10) The aggregate Oregon source income or loss number for the owner is then multiplied by the ratio computed for that owner to arrive at the amount of Oregon source income for the nonresident owner from all PTEs.

---

[5] Taxpayer accepts the fact that if any PTE conducts business in and outside of Oregon, apportionment under UDITPA is required to determine the source of the income of that one entity among the states in which the entity operates.

[6] For the purposes of this hypothetical, it is assumed that all income of any entity, and therefore all of any distributive share is "business income" under UDITPA. Only business income is subject to apportionment under UDITPA. Nonbusiness income is allocated rather than being apportioned.

Under the department's method, unitary PTEs doing no business—that is, having no sales in Oregon—would add nothing to the numerator of the sales factor for an owner. However, sales of such PTEs—the "everywhere" sales—would be added to the denominator of the sales factor for that owner. This aggregation would result in the Oregon sales factor for a taxpayer being reduced.

However, the aggregation of taxpayer's share of income or loss of all PTEs would affect the base to be apportioned. When out-of-state PTEs generate income that is added to the base amount to be apportioned for an owner, the Oregon tax liability of a nonresident owner could, as in this case, be increased even though the apportionment factor, determined for the owner on an aggregate basis, is lower. However, if the out-of-state PTEs produced losses, the Oregon tax base and tax liability of a nonresident owner could be decreased.[7]

The parties both accept the use of apportionment as a basic principle to be used when a unitary business is being conducted in Oregon and one or more other states. However, they differ as to whether apportionment is to be done in respect of some combination of the entities or in respect of each PTE separately. Taxpayer argues that apportionment calculations are done, if at all, at each PTE level.[8] The only "combination" in the view of taxpayer is the simple addition of results from various PTEs on an owner's personal tax return.

The department argues for a method in which distributive shares of a taxpayer from each PTE, having been reported by an owner on a tax return, are then to be manipulated so that both income and apportionment factors are recomputed for each owner. The result of that manipulation, in this case, was a greater Oregon source income figure and a greater Oregon tax.

---

[7] Although in this case the method applied by the department produces an amount of tax due that is greater than that produced by the method applied by taxpayer, there is no disagreement that in other cases the method used by the department, if applied consistently, could produce less revenue for Oregon.

[8] The court says "if at all" because no apportionment would be done if a PTE only does business in Oregon.

        The court considers the department's method to be a combined report-apportionment method, with combination done at the owner level. The court considers taxpayer's method to be one where each PTE apportions income or loss results separately and no further combination or manipulation of those results is done, except to add the separately stated results for any owner on that owner's tax return.[9]

A.   *Order of Further Analysis*

        There is no explicit statutory basis for the combined report position of the department. This is in contrast to current and prior statutory schemes for returns of corporations, to be discussed below, that directly or indirectly authorized or authorize some form of combination of income or loss as well as apportionment. As the department observes in its briefing, there is no explicit statutory language denying to the department the authority to require combined reporting of the type it asserts here. However, as will be demonstrated below, the history of combined reporting in Oregon demonstrates that statutory authority is necessary to support a department requirement of combined reporting.[10]

        In order to set the larger context for a discussion of the particular statutes on which the parties rely, the court will discuss first the concepts of apportionment and combined reporting for unitary groups. The court will then address two sources of authority on which the department relies: (1) case law developments regarding combined reporting for corporations and (2) UDITPA. Finally, the court will address the text and context of the relevant statutes in ORS chapters 314 and 316 that address income tax reporting for PTEs and their owners. As will be seen, these statutory provisions conflict with the position of the department and fit well with the position of taxpayer.

        [9] The term "manipulation" is used without any pejorative connotation. Rather, the term is used to denote application of a procedure or mathematical computation.

        [10] In determining the adjusted gross income of a nonresident partner, ORS 316.124(4) contemplates methods other than those specified in that statute, but only when requested by a taxpayer. There is no provision in the statutes authorizing the department to require methods that are alternatives to what is required or authorized by the statutes. The department is not, therefore, in a position where it can act in a way other than authorized by the statutes on the basis of its view about the fairness of the method set out in the statutes.

B.  *Apportionment and Combined Reporting*

The court is of the opinion that, notwithstanding some imprecise language in discussions of courts over the years, combined reporting is a concept and process separate and distinct from that of apportionment. Apportionment is the process by which a "base" of business income is divided among two or more states. In Oregon, it occurs pursuant to UDITPA. However, apportionment of a "base" is separate from determination of the "base."

A fundamental first step in this analysis is that apportionment can be applied to a base of business income of one entity operating in several states or a related group of entities operating in several states. However, apportionment of the income of a group of entities occurs when a state has adopted combination rules in some form. In both cases— either one entity or a group of entities—it is said that what is being apportioned is the income of a "unitary" operation.

Use of the word "unitary" describes two situations. First, a unitary business can exist within a single entity when that one entity operates a business in Oregon and at least one other state and the "in state" and "out-of-state" operations of that one entity are integral to each other— that is they are "unitary."[11] Apportionment is then used to divide the business income from "unitary" operations of the single entity among states.

Such apportionment of the income of the one entity is an alternative to segregated or separate reporting. Under the separate or segregated method the source of income or loss is determined by specifically identifying and locating, geographically, the source of particular items of income, gain, loss and deduction of one taxpayer. *See, e.g., Utah Const. & Mining v. Tax Com.,* 255 Or 228, 465 P2d 712 (1970).

The other instance where the adjective "unitary" has been applied is where one "unitary" business is conducted in several states by separate legal entities that are integrally related. The classic example of this is the case of a corporate group comprising a parent corporation and controlled

---

[11] *See, e.g., Donald M. Drake Co. v. Dept. of Rev.*, 263 Or 26, 500 P2d 1041 (1972).

subsidiaries carrying on, in several states, a trade or business in which the assets, management and operation of each corporation are integral to the common business conducted collectively by legally separate entities. In such a case, there developed over the twentieth century the concept and use of a combined report.[12]

The combined report first aggregates the income or loss of all separate legal entities that conduct parts of the unitary business. That combined income is then apportioned among the states in which any of the members are subject to tax. In that apportionment, the numerator of any apportionment factor would be the factor amount for all entities subject to tax in the state. The denominator would be the total of all factor amounts for all members, regardless of where they operated—that is, under current law, "everywhere sales."

The United States Supreme Court has, for the most part, concluded that the use of combined reports passes federal constitutional muster under the Due Process Clause and Commerce Clause of the United States Constitution. Much of the attention in the community of taxpayers and tax administrators has been on constitutional questions regarding the imposition of a combined report requirement. However, this case involves the predicate question of whether the department has authority to impose the requirement in respect of PTEs. No constitutional issue is presented.

C.   *Department Sources of Authority*

There are two basic sources of authority to which the department points the court in connection with its argument that it is authorized to require the form of combined reporting applied by its auditor. The first is combined reporting treatment of groups of *corporations* engaged in a unitary business conducted, both in and outside Oregon. This source includes statutes, rules of the department, and cases

---

[12] The level of control of various entities necessary to result in activities being considered unitary is usually defined, directly or indirectly, by statute. In their joint stipulation as to the activities of the PTEs being unitary or constituting one trade or business, the parties have not specifically addressed the issue of what constitutes control for this purpose. The significance of the history of statutory control definitions will be discussed below.

addressing combined reporting. The court notes that in all cases the corporations involved in such statutes, rules and cases have been "regular" or "Subchapter C" corporations. *See* ORS 314.730.

As will be discussed further below, this is important because for tax as well as general corporate law there are strict distinctions between such a corporation and its shareholders. Subchapter C corporations are not pass-through entities. The tax consequences of corporate activity for a shareholder in a Subchapter C corporation occur only when payments are made to the shareholder, either by the corporation or a third party, in respect of shares of the shareholder. Most importantly, the tax basis of an owner in shares of a Subchapter C corporation is not affected by the year to year income or loss results for the corporation. While the owner's tax basis, typically the initial amount invested, does affect the amount of gain or loss on a sale of the shares of the C corporation, the tax basis in the shares does not determine the taxability, or not, of distribution of earnings of the corporation.

However, in the case of Subchapter S corporations and partnerships, there is no such strict separation between entities and the owners of entities. Indeed, with only certain exceptions, such entities pay no income tax. Rather, the items of income, gain, loss, deduction, and credit realized at the entity level are included on an entity tax return but "flow through" or "pass through" from the entities to the owners. The owners then compute their income tax liability at the owner level.[13] Additionally, the items that flow through to the owners affect the calculation of the tax basis of the owner in the owner's interest in the PTE. Finally, the taxability, or not, of distributions of earnings from the

---

[13] Given the complexity of issues in this case, the court reminds the reader that the issue in this case is not whether the PTEs are pass-through entities. The issue is what item or items pass through. In particular the issue is whether (1) apportionment is calculated at the PTE level—with apportionment applied to the full federal distributive share with the resulting amount of Oregon source income or loss passing through to the owner, or (2) whether the full federal distributive share is considered to pass through to the owner where it is combined with such income from all other unitary PTEs and then apportioned based on an apportionment factor based on sales of all PTEs in the unitary group.

PTE is determined, from year to year, by reference to the tax basis that the owner has in the interest in the PTE.

In this case, the department auditor combined taxpayer's share of income, gain, loss, and deduction of each PTE at the owner or taxpayer level. The auditor also calculated what the auditor determined to be taxpayer's "share" of the apportionment figures for each PTE.[14]

The other authority on which the department relies to justify the actions of the auditor is UDITPA.

The court now turns to a discussion of each of these two basic authorities, on which the department relies.

D.   *Combined Reporting for Corporations*

Even before combined reporting was asserted by states as a required method, it had been settled that a corporation operating divisions or portions of its business—that is, not separate legal entities—in two or more states could be required, where the operations were "unitary," to report its income from all states and then apportion that income to the taxing state in question. The adjective "unitary" dealt with the geographical locations of business operations and not with any form of combination of income to be apportioned.

In Oregon, *Donald M. Drake Co. v. Dept. of Rev.*, 263 Or 26, 500 P2d 1041 (1972), was just such a case. The "unitary" feature of the business operation of just one entity led to the need to apportion total income of the one legal entity subject to Oregon tax, so as to determine the amount of income attributable to Oregon sources and therefore taxable in Oregon.[15]

There followed cases in which states required groups of corporations to be combined because separate entities

---

[14] The actions of the auditor occurred without any statutory provision on the details of the calculation. In addition, the department has no rules to which the auditor looked for guidance. Indeed, to the extent that the department has spoken on the issue in this case, by way of forms and instructions, those have been consistent with the position taken by taxpayer here and not with the actions of the department auditor.

[15] The unitary feature of the taxpayer's operations in *Donald M. Drake Co.* is set out in the opinion of this court. *Donald Drake Co. v. Dept. of Revenue*, 4 OTR 552 (1971).

engaged in a common business enterprise and the activities of entities were integrally related with each other and, therefore, "unitary." The result was that a method aggregating income and factor amounts, as discussed above, was employed. An example of this appears in one case on which the department places significant reliance, *Zale-Salem, Inc. v. Tax Com.*, 237 Or 261, 391 P2d 601 (1964). In that case, the Oregon Supreme Court relied substantially on the decision of the California Supreme Court in *Edison California Stores, v. McColgan*, 30 Cal 2d 472, 183 P2d 16 (1947).[16] To the similarities of the legal framework in both *Zale-Salem* and *Edison Stores* the court now turns.

In addressing the challenges to combined reports by the taxpayers involved in those cases, the courts in both *Edison Stores* and *Zale-Salem* relied upon specific statutory provisions. Pursuant to those statutes the tax agency was authorized to promulgate, and had promulgated, rules or regulations specifying that combined reporting was required in order to satisfy a statutory standard. That standard was that taxpayers be taxed on the basis that fairly reflected income from business done within the state. The court in *Zale-Salem* in particular noted that its reliance upon the decision in *Edison Stores* was appropriate given the fact that Oregon had, in ORS 314.280, a statute virtually identical to that upon which the California court had relied in *Edison Stores*.

ORS 314.280 was indeed a broad grant of authority to the department to propose rules so as to address a variety of problems or issues regarding income tax returns of all types of persons.[17] One such rule was a rule addressing com-

---

[16] Combined reports reduce or eliminate the ability of groups of corporations under common control to shift income to low tax rate states by using intergroup sales accomplished at below market rates. The combined report also eliminates the need to determine a source of individual items of income and expense in a business operation. As to shifting of income, the department has, but has not yet used in this case, the ability, under ORS 314.295, to test income shifting.

[17] For the tax years at issue in *Zale-Salem*, 1959 and 1960, ORS 314.280 provided:

"(1) If the gross income of a corporation or a nonresident individual is derived from business done both within and without the state, the determination of net income shall be based upon the business done within the state, and the commission shall have power to permit or require either the

bined reporting. Even that rule, however, only addressed combined reports for corporations.[18] No part of the rule referred to PTEs. This broad source of authority for the department to propose reporting methods, including combined reports, ended in 1965. In that year Oregon adopted UDITPA and ORS 314.280 was confined in its operation to financial institutions and public utilities.[19] Present day ORS 314.280 does not apply to taxpayer or the PTEs.

For tax years 1965 and later, for taxpayers other that those subject to ORS 314.280, no statutory basis for a department requirement of combined reporting remained. This termination of the statutory basis for combined reporting was addressed in *Coca Cola Co. v. Dept. of Rev.*, 271 Or 517, 533 P2d 788 (1975). In that case, the years 1963, 1964, 1965, and 1966 were at issue. The case involved two corporations: The Coca-Cola Company (Coca-Cola) and Pacific Coca-Cola Bottling Company (Pacific). Both corporations operated in Oregon and other states. Coca-Cola owned all of the stock of Pacific as well as numerous other corporations that had no business operations in Oregon. All of the corporations were engaged in one soft-drink business.

Coca-Cola and Pacific objected to the department's assertion that those corporations must file a combined report. The combined report that the department demanded included not only the income and apportionment factors of the two corporations operating in Oregon but also the income and apportionment factors of many other corporations with no operations in Oregon. The taxpayers accepted that each

---

segregated method of reporting of the apportionment method of reporting, under rules and regulations adopted by the commission, so as fairly and accurately to reflect the net income of the business done within the state.

"(2) The provisions of subsection (1) of this section dealing with the apportionment of income earned from sources both within and without the State of Oregon are designed to allocate to the State of Oregon on a fair and equitable basis a proportion of such income earned from sources both within and without the state. Any taxpayer may submit an alternative basis of apportionment with respect to his own income and explain that basis in full in his return. If approved by the commission that method will be accepted as the basis of allocation."

[18] It is also the case that all department rules touching on combined reporting have, over the years, only addressed corporations.

[19] The need for this change was that, by its terms, UDITPA did not apply to financial institutions or public utilities.

of them would be required to report Oregon source income based on their individual incomes and apportionment factors. They, however, challenged whether the department could require combined reporting that included income and factors of corporations with no operations in Oregon.[20]

Discussion of the limited application of ORS 314.280 for 1965 and later years and the consequence for combined reporting was necessary in *Coca Cola*. This discussion was made necessary by the fact that the 1965 and 1966 years at issue in that case were not governed by ORS 314.280. The taxpayer in *Coca Cola* pointed out that the broad authority under ORS 314.280 to require combined reporting, as recognized in *Zale-Salem*, had ended. It then argued that under the newly adopted provisions of UDITPA, the default position was single company apportionment. The only exception to the default rule was when ORS 314.670 applied.[21] This argument, if successful, would have meant that the department would have borne the burden of proof under ORS 314.670, as it then read, to show that the default method—single corporation apportionment—did not fairly represent the extent of the taxpayer's business activity in Oregon. The taxpayer argued the department had not carried that burden.[22]

On the issue for the 1965 and 1966 years, the Supreme Court characterized the argument of the taxpayers as having been that "combined reporting is contrary to the apportionment set out in the statute." The Supreme Court then stated:

---

[20] Note that in this regard the parties in *Coca Cola* stood in positions parallel to those the parties in this case occupy—agreement by both as to apportionment but differing views on some version of combined reporting.

[21] In 1965, Oregon adopted ORS 314.670, which provided:

"If the allocation and apportionment provisions of ORS 314.610 to 314.665 do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for and the commission may permit, or the commission may require, in respect to all or any part of the taxpayer's business activity, if reasonable: (1) Separate accounting; (2) The exclusion of any one or more of the factors; (3) The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or (4) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income."

[22] Appellant's Opening Brief at 3, *Coca Cola Co. v. Dept. of Rev.*, 271 Or 517, 533 P2d 788 (1975).

> "We disagree. The combined method of apportionment is wholly consistent with, and a natural extension of, the apportionment method. While it is true, as plaintiff points out, that the statute speaks of taxpayer in the singular, this is no bar. We note that the prior statute also spoke in the singular. Yet in *Zale-Salem* we approved combined reporting."

*Coca Cola Co.*, 271 Or at 528. To this observation the Supreme Court appended a footnote which read:

> "Keesling, in his article *** states '*** the fact that the Uniform Act does not specifically require [the combined method of reporting for a multicorporate business] constitutes no barrier to its adoption by the Multistate Tax Commission and the various member states.'"

*Id.* at 528 n 4. Several observations are relevant. First, the taxpayers in *Coca Cola* never argued, as the Supreme Court stated, that "combined reporting is contrary to the apportionment set out in the statute." Rather, the taxpayers in *Coca Cola* argued that combined reporting was a method for which the department could argue as an alternative apportionment method under ORS 314.670. However, as the taxpayer pointed out, if the department took that position, it would bear the burden of proof to show that the default position of single company apportionment did not properly represent the activity of the taxpayers in Oregon.

Second, the reliance by the Supreme Court on *Zale-Salem* was reliance upon a case in which everyone agreed there had been adequate statutory authority for the imposition by the department of a combined report. However, for the 1965 and 1966 years that statutory authority, ORS 314.280, no longer was applicable to the taxpayers.

Finally, the footnote of the court in fact recognizes that, while UDITPA is not a barrier to a requirement of combined reporting, "adoption" of that requirement is needed.

Most importantly, in *Coca Cola* the Supreme Court never squarely held that UDITPA itself contained statutory authority for requiring combined reporting. The lack of any such holding appears to have led to efforts by the department to have the question clarified by statute, as will now be discussed.

Within the same timeframe as the issuance of the decision in *Coca Cola*, the Oregon legislature was considering, and ultimately enacted, ORS 314.363. Or Laws 1975, ch 760, § 2. This statute was proposed by the department and explicitly authorized the department to require the use of combined reports—but, again, only for corporations.[23] There seems to be little, if any, doubt that the purpose of the department in proposing an explicit statutory authorization for combined reporting was to avoid the concerns about the scope of the *Coca Cola* decision. As the Supreme Court observed in *Caterpillar Tractor Co. v. Dept. of Rev.*, 289 Or 895, 618 P2d 1261 (1980):

> "The Department had required combined reporting as an accounting method since the 1950's *** In 1975 the Department proposed codification of combined reporting to forestall future challenges of the type made in *Coca Cola Co. ***.*"

289 Or at 901.[24]

---

[23] ORS 314.363 (1975) provides:

"(1) The Department of Revenue may permit or require an affiliated corporation that is subject to taxation under ORS chapter 317 or 318 (or both) and that is a part of a unitary group of affiliated corporations to file a combined report covering the unitary operation of the group. The report shall contain such information as shall be designated in rules adopted by the department.

"(2) An affiliated corporation is a corporation that is a member of a group of two or more corporations with a common owner or owners, either corporate or noncorporate, where more than 50 percent of the voting stock of each member corporation is directly or indirectly owned by the common owner or owners or by one or more of the member corporations.

"(3) An affiliated corporation is a part of a unitary group when it is engaged in business activities which are integrated with, dependent upon, or which contribute to the business activities of the group as a whole, and the business activities of the group are carried on and are taxable in more than one state.

"(4) The income attributable to the Oregon activities of an affiliated corporation which is a part of a unitary group of affiliated corporations shall be determined by the apportionment of the entire business net income of the unitary group and the allocation of nonbusiness income of the corporation, using the factors and methods described in ORS 314.605 to 314.675 and the rules of the department."

[24] The *Caterpillar* decision contains a discussion suggesting that a department rule in place for the years 1969 through 1972 and promulgated under UDITPA was authority for requiring a combined report. However, the court again relied, both directly and by reference to *Coca Cola*, on *Zale-Salem* and therefore, implicitly, on ORS 314.280 as a statutory source of authority. In any case, the rule discussed by the court was not in effect in the years at issue in this case. Further, as will be soon discussed, the department abandoned UDITPA as a source of authority for requiring combined returns in the case of corporations.

The statutory basis for the combined report requirement had been, of course, ORS 314.280. When, as of 1975, that statutory basis was no longer applicable to taxpayers other than utilities or financial institutions, the department persuaded the legislature to provide it with another statutory basis for its requirement of combined reporting, but again, only for corporations.

The actions of the department during the 1975 legislative session are fundamentally inconsistent with the arguments it makes here with respect to UDITPA being a source of authority for the department to require combined reports.[25] If, as will be discussed below, the department asserts that UDITPA provides a basis for it to impose combination requirements, it would have been unnecessary for it to urge adoption of ORS 314.363 in 1975, a full decade after UDITPA was in force in Oregon.

The life of ORS 314.363 as authority for combined reports for corporations lasted only until 1984.[26] At that point its provisions were no longer needed as Oregon adopted a new and comprehensive set of statutes on tax filings by corporations conducting a unitary business. *See* ORS 317.705-305.715. These rules apply today and achieve, by purposeful indirection, a combination requirement for certain corporations.

Under ORS 317.710, if a corporation files *a separate federal return*, the corporation must file a separate Oregon return. That one entity is not treated as unitary with any other corporation. However, it may have in and out of state operations and, if so, it is subject to UDITPA.[27]

Under ORS 317.710, if a corporation is a member of a *federal consolidated return*, the corporation must file a return as prescribed in ORS 317.715. That process starts with the use of the federal consolidated return, itself a form

---

[25] It is of no matter that the combination for which the department argues is done at the level of an owner in the PTEs. It is still a combination requirement but cannot be done at the entity level when an owner has differing ownership interests in the entities. However, as will be discussed below, other statutes require an entity-by-entity approach if they are to be applied correctly.

[26] *See* Or Laws 1984, ch 1, § 12.

[27] *See* ORS 317.010(10)(a)-(c).

of combined return. That form of combined return is, however, one that only reflects a certain level, 80 percent, of common ownership.

Because the federal consolidated return does not concern itself with whether related corporations are engaged in business activities that are dependent upon or contribute to the activities of groups of corporations, ORS 317.715 then proceeds to determine if the corporate group reflected in the consolidated return consists of one or more "unitary groups," as defined in ORS 317.705(2). Members of each such unitary group then have Oregon taxable income determined on the basis of what is, effectively, a combined report. A corporation in the consolidated return that is subject to Oregon tax has its tax liability determined by apportioning the income of the entire unitary group according to UDITPA. That involves a base of the income or loss of the entire unitary group and consideration of the apportionment factors of all group members. *See* ORS 317.715(3); ORS 317.010(10)(a)-(c).

Under ORS 317.705 to 317.715, the requirement for a combined return is not directly expressed, as it was in ORS 314.363. However, the statutory process for determining taxable income, based as it is on a federal consolidated return, involves a *de facto* combination when a unitary relationship among one or more groups of corporations is included in the federal consolidated return. The department attempts to escape this fact—direct statutory basis for a combination requirement—by stating that "it is clear from the plain language of ORS 317.710(2) and (3) that the reasons the legislature prescribed consolidated and separate filing methods for corporations included administrative convenience for corporate taxpayers. In particular, the legislature permitted Oregon corporate taxpayers to piggyback on their federal filing method."

These arguments of the department are simply wrong. First, far from "permitting" filing methods for corporate taxpayers, ORS 317.710 *requires* certain forms of returns. Secondly, the legislative history of the special legislative session in which ORS 317.710 was adopted shows beyond doubt that the motive of the legislature was not taxpayer convenience. The motive of the legislature was to link

Oregon combined reports—now to be called consolidated returns—to *a federal filing system that excluded foreign corporations*. The special legislative session was called to avoid negative actions that had been threatened by foreign nations strongly opposed to the Oregon requirement, under ORS 314.363, of worldwide combined reports that could include foreign corporations. Linking the Oregon reporting *requirement* to the federal consolidated return statute accomplished this nicely because federal consolidated returns cannot include foreign corporations. *See* IRC 1504(b). That this was the motive is easily seen in the legislative history.[28]

What conclusions may be drawn from the treatment of corporations and combined returns from the 1950s to the present? First, the Oregon Supreme Court in *Zale-Salem* considered it necessary to identify a statutory basis to support a department requirement of combined reporting. Second, such statutory authority in *Zale-Salem* was found in ORS 314.280. That statute ceased to apply generally after 1965. Explicit authority for a combined return requirement for unitary corporations was added in the 1975 legislative session, in ORS 314.363. The only reported cases that address the situation between 1965 and 1975 are the *Coca Cola* and *Caterpillar* decisions. Although a discussion of the provisions of UDITPA occurred in those cases, the discussion conflated the authority for combined reports based on ORS 314.280 and the *Zale-Salem* decision. Further, both cases dealt with C corporations and not PTEs. Finally, the department rule discussed in *Caterpillar*, as well as UDITPA, was abandoned by the department before the years at issue in this case.

---

[28] In a hearing before the Senate Committee on Revenue, Legislative Revenue Officer Jim Scherzinger made the following comment:

"So, [the bill] moves to a consolidated federal return, which has the effect of excluding any foreign corporation, because foreign corporations—foreign owned corporations—not foreign owned, foreign incorporated firms—corporations incorporated in a foreign country cannot be included in a consolidated return. Only domestic corporations can be there, generally speaking. And so, by limiting it to the consolidated return, you have limited the scope of how far we can apply unitary taxation. You have limited to the consolidated federal return."

Tape Recording, Senate Committee on Revenue, HB 3029, July 30, 1984, Tape 103, Side A (statement of Jim Scherzinger).

The rapid legislative response to the *Coca Cola* decision by way of adoption of ORS 314.363 demonstrates that the legislature viewed combination as a matter both important and separate from UDITPA. UDITPA was a statutory scheme that had existed for a decade at the time ORS 314.363 was added to the statutes. Its adequacy as a basis for requiring combined reporting is contradicted by the effort to have ORS 314.363 adopted.

The court concludes that both the history of legislative treatment of corporations and combined reports and the decisions of the Supreme Court regarding those statutes require a statutory basis for imposing a requirement that taxable income be determined under a combined report method when entities of any type are engaged in a unitary business. This is the case even when the entity is not itself the taxpayer. There is no explicit statutory text that supports the department position that it can require a form of combined report for PTEs or owners of PTEs.

To the argument of the department that UDITPA implicitly supplies that authority the court now turns.

E.   *UDITPA*

The only other source of statutory law apart from the provisions of ORS chapters 314 and 316 on which the department relies is UDITPA. As the court has already observed, the problem with this position of the department is that the statutory language of UDITPA does not address combination of income or factor values when a group of related entities are engaged in a unitary business. Nonetheless, the department asserts that the method it employed was a proper application of UDITPA.

As discussed above, the route that the department takes to its application of UDITPA provisions is through ORS 316.127(6) which provides that if a business is conducted partly within and partly without Oregon, the determination of net income is to be made by apportionment under UDITPA. That assertion, standing alone, is not inconsistent with the position this court discussed above—when a single entity conducts business within and without the state, the geographic sourcing of income occurs

by application of UDITPA. UDITPA may apply to business conducted by one entity or, when a statutory basis exists, several entities. However, nothing in UDITPA serves as a basis for a *requirement* of combined reporting. The history of application of UDITPA to corporations and groups of corporations conducting a single trade or business demonstrates that. Combination is not inherent in UDITPA but may be required if there is otherwise a statutory basis for doing so.

The conclusion of the department contesting the foregoing conclusion is based on this premise:

> "The statutes and rules under UDITPA establish that when a nonresident taxpayer conducts a single, unitary business through multiple pass-through entities, the apportionment method must be applied as a whole to the entire unitary business enterprise."

The department's analysis, in pages 5 to 8 of its cross-motion proceeds, not by reference to a statutory requirement, but rather by reference to rules it has promulgated under UDITPA. The department takes the word "business" from the foregoing quotation and proceeds as follows:

(1) It properly identifies the rule that apportionment applied, during the years at issue, only to "business income."

(2) It states that determination of "business income" depends on identification of the unitary trade or business, the income of which must be apportioned.

(3) It cites OAR 150-314-0351 for the proposition that where a taxpayer has more than one trade or business, the separate income of each business is to be subjected to apportionment, using income and factors from each trade or business.

(4) It then cites the rule stating that if there is a unitary business operating inside and outside Oregon, apportionment is required.

(5) To this point in the analysis, all language in the rules upon which the department relies and the positions taken by the department apply equally to

a taxpayer operating a business, or businesses, in one or several entities.[29]

(6) It then relies on a selected portion of OAR 150-314-0335(6) for the conclusion that UDITPA, the statute purportedly being interpreted, is support for the department requiring a combined report when a taxpayer conducts business in more than one entity.

The linchpin of the department's argument is therefore the portion of language found in OAR 150-314-0335(6) (2016) (formerly OAR 150-314.610(1)-(A)(6)) upon which it relies. That portion states:

"The unitary business that is conducted in Oregon includes both a unitary business that the taxpayer alone may be conducting and a unitary business the taxpayer may conduct with any other person or persons."

The premise of the department's argument is that this portion of its rule has the effect of creating a basis for the department to require combined reporting as an element of the rule. However, the language quoted by the department neither uses the words "combined report," nor includes any language suggesting that such a report is mandatory. Nor does the language quoted by the department purport to be an interpretation of any statutory text. That the language the department selectively quoted has no such purpose is seen when one considers the full text of the subsection from which the department's quote is taken:

"Relationship of transactional and functional tests to U.S. Constitution. The Due Process Clause and the Commerce Clause of the U.S. Constitution restrict States from apportioning income as business income that has no rational relationship with the taxing State. The protection against extra-territorial state taxation afforded by these Clauses is often described as the 'unitary business principle.' The unitary business principle requires apportionable income to be derived from the same unitary business that

---

[29] One entity can conduct two or more lines of business in several states—if those operations are not unitary, apportionment would be applied separately to each line of business. Accordingly, to this point, nothing in the rule language addresses combined reporting—that is when a combination of entities is required to determine both the base to be apportioned and the calculation of the apportionment factors.

is being conducted at least in part in Oregon. The unitary business that is conducted in Oregon includes both a unitary business that the taxpayer alone may be conducting and a unitary business the taxpayer may conduct with any other person or persons. Satisfaction of either the transactional test of the functional test complies with the unitary business principle, because each test requires that the transaction or activity (in the case of the transactional test) or the property (in the case of the functional test) be tied to the same trade or business that is being conducted within Oregon. Determination of the scope of the unitary business being conducted in Oregon is without regard to extent to which Oregon requires or permits the filing of a consolidated Oregon return."

OAR 150-314-0335(6) (2016) (formerly OAR 150-314.610 (1)-(A)(6)).

The full text of the rule demonstrates that this interpretive rule has nothing to do with combined reporting or any connection between UDITPA and combined reporting. Instead, it has to do with the definition of that which is the subject of apportionment, namely "business income." It is important here to note that, under UDITPA, income of taxpayers operating in several states, during the years at issue, was either "business income" or "nonbusiness income."[30]

That distinction was important because the process of apportionment was applicable only to "business income." Items of "nonbusiness income" were assigned entirely to a particular state based on the rule of allocation rather than apportionment. OAR 150-314-0335 addressed this dichotomy. However, the question of definition of business and nonbusiness income can arise with both one entity and a group of entities. The answer to the question does not relate to whether, under different statutes, the income of several entities is to be combined.

Further, a federal constitutional question can arise when business income can be sourced to more than one state. In such cases, without regard to the number of

---

[30] These tests, the functional and transactional tests, have now been statutorily superseded. Importantly, they were court developed tests and were not explicit in the definition of business income in UDITPA.

entities involved, there is a risk of multiple state tax lia-
bilities violating Commerce Clause concerns about multiple
burdens on interstate commerce. That is the context for the
department's discussion in OAR 150-314-0335. Here again,
however, the question can arise whether the income is that
of one or a group of entities. Therefore, the language in the
rule on which the department relies is merely a gratuitous
observation. While it is true that in the case of multiple enti-
ties "business income" may be determined under a combined
report, that observation does not resolve the question of
whether Oregon has imposed a combined reporting require-
ment in respect of the multiple entities.

There is no doubt that *if* a state applies apportion-
ment principles to taxpayers who operate businesses in sev-
eral states, whether in one or several entities, the linchpin of
the *constitutional* permissibility of that method is the "uni-
tary business principle." *Mobil Oil Corp. v. Commissioner
of Taxes*, 445 US 425, 439, 100 S Ct 1223, 63 L Ed 2d 510
(1980). That fact does not address, much less answer, the
question of *whether* a state has, by statute, imposed a com-
bined report requirement on businesses operating in sepa-
rate entities even when, together, the entities constitute a
"unitary business."[31]

In short, the only rule language promulgated by the
department under UDITPA that speaks to anything other
than "a taxpayer" is the language that is found in a discus-
sion of constitutional limits. Into that discussion the depart-
ment itself inserted conclusory language about a "unitary
business" without even addressing the question of a source
of statutory authority for a combined return requirement.
This case is not about constitutional limits.[32]

The statutory provisions of UDITPA do not address
combined reporting. The portion of rule language on which
the department relies for its conclusion cannot therefore

---

[31] Recall at this point the fact that where any entity in which a taxpayer is
an owner conducts its business in more than one state, the taxpayer's tax liabil-
ity is determined using apportionment principles. In this case the question to be
answered is combined reporting, not apportionment.

[32] Nor is any argument made that the statutory construction problem pre-
sented in this case might be affected by the doctrine of constitutional avoidance.

be a valid interpretive rule. The court gives no weight to the department argument, based on OAR 150-314-0335(6), that UDITPA is a source of authority pursuant to which the department can require any form of combined reporting.

This conclusion is consistent with how combined reporting and UDITPA have evolved statutorily. As already discussed, combined reporting, in the context of an Oregon statutory scheme that included UDITPA first arose in the *Coca Cola* case, and then only as to corporations. There the court rejected a taxpayer's objection to the requirement of a combined report for corporations. However, the basis of that action was far from clear and the Supreme Court relied on prior case law under different statutory provisions which had been the basis for earlier approval of combined reports for corporations.

The virtually contemporaneous issuance of the *Coca Cola* opinion and the adoption of ORS 314.363, containing, as it did, statutory authority for combined reports had the effect of isolating *Coca Cola* as authority for corporate combined reporting. *Coca Cola* provided no basis for a requirement of combined reporting for noncorporate taxpayers such as the PTEs and the owner of such PTEs involved in this case.

A further fact relating to ORS 314.363 and UDITPA provides compelling context for a construction of UDITPA as not including authority for the department to require combined reports. This fact was the promulgation by the department of combined report rules following the adoption of ORS 314.363. Those rules are found in OAR 150-314.363(B) (1975). At the time those rules were promulgated, the department must have understood that the former rules on combined reports, promulgated under ORS 314.280, could not be applied to corporations other than those engaged in banking or public utility business. It needed to promulgate rules for combined reports for corporations in other businesses. The department approached this task with a rule that was not based on an interpretation of UDITPA. Rather, the department adopted its rules only pursuant to the newly created statutory authority found in ORS 314.363. This act alone indicates that even the department understood that

UDITPA was not the statutory source of a combined report requirement.

However, even more importantly, the department, in 1975, retained language to the rules it had already promulgated under UDITPA in 1973. In 1973, the following language was added to OAR 150-314.615(D) under the heading "Combined Report":

> "If a particular trade or business is carried on by a taxpayer and one or more affiliated corporations, nothing in ORS 314.605 to 314.670 or in these rules shall preclude the use of a 'combined report' as described in OAR 150-314.363(B), whereby the entire business income of such trade or business is apportioned in accordance with ORS 314.650 to 314.655."

What the department did was to adopt rules on combined reporting under ORS 314.363 *and, at the same time, it retained language in its rules specifying that UDITPA did not preclude combined reporting.* While it is true that the provisions of ORS 314.363 have since been replaced by provisions in ORS chapter 317, the actions of the department in 1975 speak volumes about what its view of the relationship of UDITPA and combined reporting was and the extent to which UDITPA was a source of authority for combined reporting. The actions of the department were completely contrary to the department's argument in this case—that UDITPA actually allows the department to require combined reporting. Given the language in OAR 150-314.615(D) in 1975, at the point when explicit statutory authority for combined reporting for corporations was enacted, one cannot say that UDITPA was or, as the department now insists, is a source of authority for combined reporting.[33]

F.   *Text and Context of Relevant Statutes*

The statutes addressing income from Oregon sources in the case of nonresident partners are ORS 316.124 and ORS 316.127. The relevant statutes for shareholders in

---

[33] The conclusion the court draws as to UDITPA being a source of authority for combined reporting also answers the assertion by the department that somehow ORS 314.675 serves as support for finding in UDITPA a source of authority for combined reports. Here again, the statute cited by the department, while it addresses apportionment, does not address combined forms of reporting.

S corporations are ORS 316.118 and ORS 316.127. Relevant statutory provisions as to both entity forms are also found at ORS 314.712 through 314.752. As to both entity forms, a relevant set of statutes is found in ORS 314.775 through 314.784.[34] The following discussion will be addressed to partnerships and partners. As stated above, rules for such entities parallel the rules for S corporations.

ORS 316.124 provides:

"Determination of adjusted gross income
of nonresident partner.

"(1) In determining the adjusted gross income of a nonresident partner of any partnership, there shall be included only that part derived from or connected with sources in this state of the partner's distributive share of items of partnership income, gain, loss and deduction (or item thereof) entering into the federal adjusted gross income of the partner, as such part is determined under the rules adopted by the Department of Revenue in accordance with the general rules in ORS 316.127.

"(2) In determining the sources of a nonresident partner's income, no effect shall be given to a provision in the partnership agreement which:

"(a) Characterizes payments to the partner as being for services or for the use of capital, or allocated to the partner, as income or gain from sources outside this state, a greater proportion of the partner's distributive share of partnership income or gain than the ratio of partnership income or gain from all sources, except as authorized in subsection (4) of this section; or

"(b) Allocates to the partner a greater proportion of a partnership item of loss or deduction connected with sources in this state than the proportionate share of the partner, for federal income tax purposes, of partnership loss or deduction generally, except as authorized in subsection (4) of this section.

"(3) Any modification to federal taxable income described in this chapter that relates to an item of

---

[34] The statutory provisions listed above pertain to the calculation and collection of tax on the income of a PTE owner from Oregon sources. It is only that income that is subjected to tax under ORS 316.037(3).

partnership income, gain, loss or deduction (or item thereof) shall be made in accordance with the partner's distributive share, for federal income tax purposes of the item to which the modification relates, but limited to the portion of such item derived from or connected with sources in this state.

"(4)  The department may, on application, authorize the use of such other methods of determining a nonresident partner's portion of partnership items derived from or connected with sources in this state, and the modifications related thereto, as may be appropriate and equitable, on such terms and conditions as it may require.

"(5)  A nonresident partner's distributive share of items of income, gain, loss or deduction (or item thereof) shall be determined under ORS 314.714(2). The character of partnership items for a nonresident partner shall be determined under ORS 314.714(1)."

The language of ORS 316.124(1) speaks in the singular. Reference is made to: "partnership," not partnerships; determination of adjusted gross income of a nonresident "of any partnership," not of all unitary partnerships; determination is made of the partner's "distributive share," not distributive shares; what is to be determined is that "part derived from or connected with sources in this state," and not those parts derived from this state.

A partner has a distributive share in each partnership in which the person is a partner. That distributive share is determined by the partnership agreement. This statement is supported by the provisions of ORS 314.714(2) and ORS 316.124(2). Those statutes refer to a singular share determined by reference to the provisions of one partnership agreement. In addition, Oregon follows federal definitions in the determination of the base of tax. In the case of partnerships, Internal Revenue Code (IRC) section 704(a) provides:

"A partner's distributive share of income, gain, loss, deduction or credit shall, except as otherwise provided in this chapter, be determined by the partnership agreement."

Taxpayer here did have interests in more than one partnership. Those interests may, and in this case did, vary as to the percentage ownership interest. However, in each such entity taxpayer had one distributive share.

The department attempts to escape the import of the singular statements in ORS 316.124(1) by arguing that ORS 316.124 in addressing a "distributive share" refers to a tax base to be sourced but not the sourcing of that share. In the department's view, distributive shares from several partnerships can be aggregated at the owner level and then that total can be sourced by application of UDITPA. The department argues that ORS 316.127(6), containing as it does a reference to UDITPA, is the authority for its aggregation or combination of the income and factor values attributable to the one owner of several distributive shares. This is nothing more than the department's argument that UDITPA is the basis for its imposition of a combined reporting method. For the reasons previously stated in this analysis, the court rejects that position of the department.

There are other problems with the department position, each involving text and context of the statutes on taxation of partners and partnerships. To those the court now turns.

G.  *The Problem of a "Part" Greater Than the Whole*

Aggregation of distributive shares is ostensibly permitted, in the view of the department, under ORS 316.127(6). Such aggregation leads to results that conflict with the provisions of ORS 316.124(1). Not only is the starting point in ORS 316.124 one distributive share, it is in fact the "distributive share" determined for federal tax purposes. This can be seen by deconstructing the language of ORS 316.124. The elements of the statute are as follows:

(1)  The determination to be made is the adjusted gross income of a nonresident partner of any partnership.

(2)  There is to be included only "that part" of something.

(3)  The "something" is "the partner's distributive share of items of partnership income, gain, loss and deduction (or item thereof) "entering into the federal adjusted gross income of the partner."

(4)  The "part" of the federal distributive share, "such part" in the words of the statute, is determined under rules adopted in accordance with the general rules of ORS 316.127 and therefore in accordance with UDITPA.

However, as already discussed, UDITPA only serves to apportion and allocate income as between Oregon and other states. It does not itself provide authority for combining tax items of a taxpayer.

Under this statutory language, the "part" of the federal distributive share can, both mathematically and logically be, at most, the entire federal distributive share.[35] It follows that the "part "of the federal distributive share will be something either equal to or less than the full federal distributive share. The statutory language does not admit of a result in which, as to any particular partnership, the distributive share of an owner from Oregon sources is greater than the federal distributive share.

The returns of taxpayer filed for the years at issue are consistent with the mathematical and logical limit described above. This is because the apportionment done for sourcing is done at the partnership level for each partnership, with a nonresident's share of Oregon source income being that owner's percentage interest in the total Oregon source income of the partnership. However, the method for which the department advocates would, in some cases, exceed the mathematical limit of ORS 316.124(1) described above. It would result in an Oregon distributive share that would be *greater* than the federal distributive share of the taxpayer in a partnership. In such a case the Oregon distributive share would not be "a part" of the federal distributive share. Consider the following hypothetical:

(1) Taxpayer has a 50 percent distributive share in all tax items in each of Partnerships A and B. The distributive share is determined in accordance with the partnership agreement and that determination is not in conflict with ORS 316.124(2). The two partnerships are "unitary" within the meaning of the stipulation of the parties to this case.

(2) Partnership A operates only in Oregon and all sales of Partnership A are made in Oregon. The Oregon sales and "everywhere" sales are $100X. The total net income of Partnership A is $25X.

---

[35] This would be true in general, and was true for taxpayer in this case, when the operations of a partnership occurred entirely within Oregon.

(3) Partnership B operates entirely in Washington and all sales of Partnership B, totaling $100X, are outside Oregon. The total net income of Partnership B is $75X.

(4) In computing the Oregon source income from Partnership A, the department would first aggregate the taxpayer's shares of income from both partnerships. That aggregate would be 50 percent of ($25X + $75X)—that is $50X.[36]

(5) The department would then compute an apportionment factor for taxpayer by dividing the taxpayer's share of Oregon sales, 50 percent of the $100X sales of Partnership, that is $50X, by taxpayer's share of everywhere sales—50 percent of $200X, that is $100X. The sales factor would be $50X/$100X, that is 50 percent.

(6) The apportionment factor of 50 percent would then be applied to the taxpayer's $50X share of aggregate income to yield an Oregon distributive share for that partner, of $25X. This amount of $25X would, analytically, have to be attributed to Partnership A because Partnership B, although unitary with Partnership A, has no operations in Oregon and no sales in Oregon.

The problem with this result is that the taxpayer's federal distributive share of income from Partnership A is $12.5X, that is, the taxpayer's share of 50 percent in Partnership A, multiplied by the $25X income of Partnership A. ORS 316.124(1) contemplates that the Oregon source amount will be a "part" of the taxpayer's federal distributive share in Partnership A. However, in this case the Oregon source amount of $25X is a *multiple* of the taxpayer's federal distributive share, which is only $12.5X.

In the hypothetical set out above, the only way that one can avoid this conflict with the statutory language in ORS 316.124(1) is to compare the $25X Oregon source

---

[36] Because Partnership B has no sales in Oregon, it could never have assigned to it any Oregon source income. The numerator of the apportionment factor for Partnership would be zero and that would always produce a zero apportionment factor.

amount to the *aggregate* federal income shares of the tax-payer in both Partnership A and Partnership B. That would add the taxpayer's federal income share of $12.5X in Partnership A to $37.5X (50 percent of $75X), the taxpayer's federal income share from Partnership B. That result is $50X. If that aggregation is done, the Oregon source amount of $25X is only a "part" of the aggregate federal distributive share of $50X.

However, the only way to read ORS 316.124(1) so as to avoid a result where the Oregon source "part" of a federal distributive share from one partnership could exceed the federal distributive share from that partnership is to have the text of the statute read as follows:

> "In determining the adjusted gross income of a non-resident partner of any partnership [*or unitary group of partnerships*], there shall be included only that part derived from or connected with sources in this state of [*the aggregate of*] the partner's distributive share[*s*] of items of income, gain, loss and deduction (or item[*s*] thereof) [*of such partnership or unitary group of partnerships*] entering into the federal adjusted gross income of the partner, as such part is determined under rules adopted by the Department of Revenue in accordance with the general rules in ORS 316.127."[37]

Under ORS 174.010, this court cannot make such additions to ORS 316.124(1). The text of the statute as adopted contemplates apportionment of each federally determined distributive share of a taxpayer's income. It does not contemplate the aggregation of such federally determined distributive shares prior to apportionment. Stated differently, the problem of the "part" being greater than the whole can only be avoided by doing apportionment at the partnership level.

H.  *The Problem of Aggregation of Income and Apportionment Values—The Basis Problem*

The method for which the department argues is one in which current income or loss for a nonresident partner

---

[37] In the foregoing, bracketed and italicized words or letters are added; the one parenthetical in the text is in the original text but has the term "item" made into a plural by addition of the letter "s."

is determined by (1) aggregating the taxpayer's shares of business income from all partnerships, (2) aggregating the taxpayer's shares of Oregon and everywhere sales from all partnerships to develop an apportionment factor, and then (3) multiplying the business income aggregate share by the apportionment factor aggregate.

This process does result in the *aggregate* Oregon source amount being, in all cases, a "part" of the *aggregate* federal income or loss amount. However, this method does not proceed to attribute portions of the aggregate amounts of Oregon source income or loss to each of the partnerships. If that attribution is done, it will always be the case that, as illustrated above, the Oregon source amount *could* be a multiple of the federal distributive share rather than, as ORS 316.124(1) contemplates, a "part" of the federal distributive share. As noted above, the aggregation approach of the department alleviates what could otherwise be a conflict with ORS 316.124(1) and the possible results of the department's method.

However, the attribution of Oregon source amounts of income or loss to each partnership is necessary if the overall statutory scheme for taxation of partners is to operate correctly. In particular, if Oregon source amounts are not attributed to particular partnerships—that is, if the aggregation is not disaggregated—the rules on determination of the tax basis in a partnership interest cannot be properly determined. That tax basis is affected by Oregon source gain or loss amounts in any given year. It is also an element of determining Oregon tax consequences for the owner of the partnership interest in future years.

The provisions of Oregon law of importance for this analysis are ORS 314.716 and ORS 314.720.[38]

ORS 314.716 provides:

"(1)  The adjusted basis of a partner's interest in a partnership shall be determined pursuant to the method

---

[38] The court addresses these particular provisions as to partnerships. These rules and consequences apply equally to S corporations. *See* IRC § 1367; ORS 314.736. It may well be that there are other examples of the point made at this stage of the analysis. However, as will be seen, the use of only the statutory provisions indicated reveals decisive contradictions in the department method.

described in sections 704(c)(1)(B)(iii), 705 and 733 of the Internal Revenue Code, and shall be increased or decreased as provided in this chapter and ORS chapter 316, 317 or 318, whichever is applicable.

"(2)   Upon the sale or exchange of an interest in partnership, gain or loss shall be recognized to the transferor partner pursuant to section 741 of the Internal Revenue Code.

"(3)   If a partnership elects to adjust the basis of its assets under section 754 of the Internal Revenue Code, then upon a transfer of an interest in the partnership by sale or exchange upon the death of a partner, that election shall also be effective for Oregon income tax purposes."

ORS 314.720 provides, in relevant part:

"(1)   Gain or loss shall not be recognized by a partner upon a distribution by a partnership to that partner, except to the extent provided in section 731 of the Internal Revenue Code."

The foregoing provisions of Oregon law incorporate IRC sections 705, 733, and 731. Those federal provisions deal with the computation of the adjusted basis of a partner in a partnership interest and the tax consequence of distributions of money made by the partnership to a partner. They may be summarized as follows:

(1)   For any given year, a partner's basis in a partnership interest in a partnership is increased by a partner's distributive share of income or decreased by a partner's distributive share of loss of *that particular partnership*. *See* IRC § 705.

(2)   The basis of a partner's interest in a partnership is reduced, but not below zero, by any distribution of money to the partner. *See* IRC § 733.

(3)   Distributions of money to a partner that exceed the adjusted basis of that partner in a particular partnership result in gain being recognized by the partner for tax purposes. To the extent the distribution of money exceeds the adjusted basis, the gain or loss is considered as arising from a sale or exchange. *See* IRC § 731.

In applying these rules, a nonresident partner's basis, for Oregon tax purposes, will be adjusted under the rules of IRC section 705 only by the amount of income or loss from Oregon sources attributable to a distributive share. Because the distributive share of Oregon source income or loss for an owner will often, if not always, be different in amount from the federal distributive share amount, it is most likely that, over time, the basis of the owner in the PTE interest for Oregon purposes will differ from the basis of that interest for federal purposes. ORS 316.716 addresses this possibility and provides that appropriate adjustments will be made.[39]

It follows that, in determining tax consequences to an owner in a PTE from distributions, the basis of a partner in a *particular partnership must be determined*. In making that determination, one must both calculate and employ only the Oregon source "part" of a federal distributive share of income or loss, *from that partnership*. The focus on a particular partnership is critical because under IRC section 731, gain is determined by comparing cash distributions from one partnership to the basis of a taxpayer's interest in that one partnership. There is no justification for combining the amounts of cash distributions and tax basis figures from several partnerships, even if they are unitary in relationship.

ORS 314.716 and ORS 314.720 require partnership-by-partnership determinations of Oregon source income and loss for the computation of adjusted basis and tax consequences to a partner in future years resulting from cash distributions by a particular partnership. These rules do not allow aggregation.

The department method could be applied in respect of the ORS 314.716 and ORS 314.720 rules, but only if the aggregate numbers developed by the department were then disaggregated so as to attribute Oregon source income or loss numbers developed under the department for a nonresident

---

[39] ORS 316.716(1)(e) would apply to make the appropriate adjustment. Although ORS 316.716 applies to a sale or exchange of an asset, recall that under IRC section 731 distributions of money in excess of the adjusted basis of an owner in a PTE is considered to be such sale or exchange.

partner to particular partnerships. However, that disaggregation process, in a case such as shown above—in the discussion of the part being greater than the whole—could produce an Oregon source distributive share that exceeded the federal distributive share from the particular partnership.

In proposing a method that relies on aggregation, the department is, within the entire context of Oregon taxation of partnerships and partners, caught between Scylla and Charybdis.[40] Scylla is, as discussed above, the problem of a part being greater than a whole. To avoid Scylla, one must read ORS 316.124(1) as referring to an aggregate of distributive shares. That reading permits the department to escape the possibility—at odds with the text of ORS 316.124(1)—that the Oregon source share exceeds the federal share.

Charybdis is the whirlpool in the statutory language of ORS 314.716 and ORS 314.720, language that effectively requires that Oregon distributive shares of income or loss must be determined and attributed on a partnership-by-partnership basis. Upon this hazard, any aggregation approach would founder.

Yet, to avoid the whirlpool of Charybdis, one must sail into the rock of Scylla by foreswearing the use of an aggregation approach.

There is no textual, contextual or other basis for concluding that in providing a comprehensive set of statutes for partnerships, the legislature contemplated the use of an aggregation method for some purposes—applying ORS 316.124(1)—but a partnership-by-partnership approach for application of ORS 316.716 and ORS 316.720.

The method used by taxpayer determines Oregon source income or loss at the entity level by application of UDITPA principles at that level. Taxpayer's share of that amount is then necessarily only a "part" of the federal distributive share and this result is consistent with the

---

[40] These obstacles from Greek mythology most famously appear in Homer's *Odyssey*. Odysseus was forced to carefully navigate between both hazards, avoiding each to avert disaster. A modern idiom to express the same dilemma is "to be between a rock and a hard place."

text of ORS 316.124(1). Additionally, the partnership-by-partnership approach can then be consistently applied in determining what adjustments to make to the basis of the particular taxpayer in each particular partnership, in each case consistently with ORS 314.716 and ORS 314.720.

Finally, an important indication that the method followed by taxpayer is the correct one is that this method is consistent with the forms and instructions provided by the department.

I. *The Problem of Aggregating Modifications and Out-of-State Members—Reference to Corporation Statutes*

Although Oregon starts with federal taxable income numbers for calculation of taxation of corporations and individuals, adjustments are required for modifications, additions, and subtractions required by specific Oregon statutes. *See* ORS 316.680 - 316.744; ORS 316.806 - 316.970; ORS 317.010(10). A typical adjustment is for any difference between depreciation allowed under Oregon law and that allowed under federal law. *See* ORS 316.707.

In the case of groups of corporations that are included in an Oregon consolidated return under ORS 317.715, ORS 317.715(3)(a) addresses how the modifications are to be made. Specific provision is made for corporations that, while included in a unitary group, are not otherwise subject to Oregon tax and would not be filing an Oregon return on which modifications would be shown. In such a case, the income of such a corporation is, by statutory directive, calculated "as if" the corporation was subject to Oregon tax and the appropriate adjustments were reported. This step is taken so that the income or loss amounts of various corporate members in the unitary group are stated on a consistent basis. That consistently stated base can then be apportioned or allocated under UDITPA.

While it is true that partnerships are not taxable as such under Oregon law, they are required to file a tax return on which taxable income or loss is reported. That amount is then the basis for calculation of the income of each partner, according to the distributive share of the partner. The forms of return required by the department also require the

partnership to report any modifications required by Oregon law. If a partnership has no income from Oregon sources and has no resident partner, no return of the partnership is required to be filed. As a result, no report is made of Oregon modifications to partnership income or loss as determined under federal law.

If the legislature intended or contemplated that incomes of partnerships in a unitary relationship were to be aggregated, either at the entity level or at the partner level, the court believes that the legislature would have required, as it did with corporations, that income of partnerships that did not file Oregon returns be restated "as if" the partnership was required to file an Oregon return. The "as if" step could then have provided for adjustments and modifications required by Oregon law.

No such requirement is found in the statutes addressing calculation of partnership income or distributive shares of such income on which the tax liability of nonresidents is computed.[41] The fact that no such modification process is provided for partnerships operating outside Oregon and not subject to Oregon return requirements is consistent with a conclusion that the legislature did not intend combination of such partnerships with those operating in Oregon.

That the legislature contemplated no such combination is also demonstrated by the fact that in ORS 316.124(3), the legislature provided for modification to be accomplished separately for each partnership. That subsection deals with modifications to be made in determining the "part" of the federal distributive share under ORS 316.124(1). Most importantly, any modification of an item, such as depreciation, cannot exceed the *portion* of the item derived from or connected with sources in Oregon. That limitation can only sensibly be applied on a partnership-by-partnership basis. Why? Because one must calculate the portion of the depreciation allowance that is derived from sources in Oregon. That requires a determination of property of each partnership located in Oregon. In addition, the Oregon source limit in subsection (3) is applied on a partner-by-partner basis in accordance

---

[41] The court assumes, without deciding, that Oregon could constitutionally require such filing.

with the distributive share of each partner in one partnership. These separate calculations require a partnership-by-partnership treatment of modifications and are inconsistent with the combination theory of the department.

Indeed, the department must have thought so when it issued instructions for preparation of the partnership returns and information returns to partners. These forms and instructions call for modifications to be done at the partnership level. They are consistent with the method followed, and defended, by taxpayer in this case. They are inconsistent with the method for which the department contends.

J.  *PTE Statute*

The department relies on ORS 316.127(6) to reach its conclusion that the income of a taxpayer from an interest in several partnerships is not simply the addition of the taxpayer's shares of the partnership income on the taxpayer's personal return and *after* apportionment at the level of each partnership. Rather, the department argues the following steps are to occur:

(1) The full federal share of income of the taxpayer in each PTE is to be combined with all other such shares from all of the PTEs.

(2) An apportionment factor for the taxpayer is to be determined by aggregating, in the numerator and denominator, the factor values from all of the PTEs.

(3) The taxpayer's share according to the department is the taxpayer's percentage membership interest in each PTE.

This method, aggregation of income and factors at the partner or owner level, rather than computation of Oregon source income separately at the entity level for each PTE, is inconsistent with important statutory provisions regarding PTEs.

Perhaps because of recognition of the popularity of PTEs as vehicles for business operations, the legislature has provided special rules for tax returns of such entities and a form of combined reporting known as a composite return. *See* ORS 314.775 - 314.784 (the PTE statutes). The

PTE statutes were made part of Oregon's income tax regime in 2005. Several aspects of the PTE statutes, and related rules of the department, are inconsistent with the position of the department in this case. Both partnerships and S corporations are addressed in the PTE statutes and the department's rules. OAR 150-314-0510(7). The PTE statutes govern both composite returns and withholding obligations of certain PTEs.

A "composite return" is not a different phrasing of the term "combined return," or "consolidated return." Nonetheless, the PTE statutes and rules provide important context for consideration of how, if at all, the income of nonresident partners and S corporation shareholders is to be determined under other provisions of ORS chapters 314 and 316.

A composite return is a return filed by a PTE on behalf of nonresident owners who elect to be included in the return. ORS 314.778(1). At least one nonresident owner must join in the election. ORS 314.778(2). If a proper election of owners is in place, the PTE prepares and files with the state a return that reports:

(1) "the share of distributive income of each electing owner,"

(2) "the share of distributive income from Oregon sources of each electing owner," and

(3) "the amount of tax withheld under ORS 314.781."

ORS 314.778(4). The information on such returns must also be provided to the nonresident owners in the PTE.

Under the PTE statutes, the "share of distributive income from Oregon sources" is a subset of the "share of distributive income" of an electing owner. This is made clear in the department's rules under the PTE statutes. Subsection (2) of OAR 150-314-0510 states that "distributive income" is an owner's *full share* of income of a PTE *for federal purposes*. However, two additional steps are required by the rules in order to arrive at "the distributive share from Oregon sources" for a nonresident owner.

The first step, found in subsection (4) of the rule, requires modification to such full federal "distributive

share" as called for by ORS chapter 316—the chapter relating to individual taxpayers. These are the modifications that have been statutorily required in order to arrive at Oregon income. They include differences in what Oregon allows as depreciation, depletion and calculation of gain or loss. Adjustments made for such items produce a modified distributive income amount.

The second step, the most important for this case, is in subsection (6) of the rule. That subsection provides that the statutory term "distributive share from Oregon sources" means:

> "the portion of the *entity's* modified distributive income that is derived from or connected with Oregon sources. For entities operating in Oregon and one or more other states, Oregon-source distributive income is determined by attributing to Oregon sources that portion of the modified distributive income *of the entity* * * * determined in accordance with the allocation and apportionment provisions of ORS 314.280 or ORS 314.610 to 314.675."

(Emphases supplied.)

The following points are relevant as to this interpretive rule. First, although the statutory term being interpreted is "share of distributive income from Oregon sources," the rule speaks to "distributive share from Oregon sources." This slight modification is of no importance and the rule is obviously interpreting the statutory phrase "share of distributive income from Oregon sources."

Second, the reference in the rule to ORS 314.280 is applicable in cases, unlike this case, where the PTE is a financial institution or a public utility. The reference to ORS 314.610 to 314.675 is, of course, a reference to UDITPA, the apportionment provisions for entities not covered by ORS 314.280.

Finally, and most importantly, the rule requires that *the entity* calculate and report items that will govern tax consequences for the owner, including withholding actions. Such actions are to occur only with respect to the Oregon source portion of the distributive share of a nonresident owner. Under the department's rule, that distributive

share is computed for each PTE separately and thereafter for each nonresident owner in the entity. There is no aggregation of entities or interests of owners of the type for which the department argues in this case.

Under the PTE statutes and the department's interpretive rules, there is nothing for a nonresident owner to do other than include the *entity calculation* of Oregon source income on the owner's tax return. Each entity would, of course, make such calculations only with respect to *its* income amounts and factor amounts.[42] The PTE statutes and rules do not in any way contemplate that the figures reported to the owner and, as will be discussed below, serving as a basis for withholding, would then be subject to any manipulation of the type performed by the auditor in this case.[43] The PTE statutes are thus directly inconsistent with the actions of the department in this case. The statutes and department rules contemplate entity level calculations. The action of the auditor in this case employs owner level calculations.

It is true that the Joint Stipulation of Facts is silent as to whether any of the PTEs in this case filed composite returns. That is of no moment. There is no indication in the PTE statutes or the other statutes dealing with PTEs that the ultimate outcome for a nonresident owner making one or more elections to join a composite return is to be different from the ultimate outcome for a nonresident owner who makes no such election. That being the case, it is not

---

[42] In this case, the department is not arguing that partnerships that have a unitary relationship must file combined reports including all entities and then apportion income to individual owners. That would be impossible to administer in cases where a nonresident partner, as taxpayer in this case, had different percentage ownerships in the several PTEs. This impossibility is not found in the case of shareholders in Subchapter C corporations that file unitary returns under ORS chapter 317. The reason for this is that such shareholders do not have potentially differing interests in the various members of the corporate group. The department's attempt to apply unitary rules developed in connection with Subchapter C corporations to partnerships fails to take into account this fundamental reality. Or, perhaps better stated, the department attempts to escape the reality by moving apportionment from the entity to the owner level.

[43] Consider that what the auditor did in this case was essentially to reverse the allocation and apportionment calculations of the entities, combine all of taxpayer's federal income shares from the entities, and then aggregate factor figures to compute an aggregate apportionment percentage for PTEs.

possible to have for this taxpayer an outcome that is materially different from the outcome that would have occurred if taxpayer had made an election to be included in a composite return. Had taxpayer here joined in composite returns for each of the PTEs, the result as to income tax liability in Oregon would have been identical to that reported by taxpayer in his return.

The PTE statutes on reporting provide compelling context within which the statutory provisions of ORS chapters 314 and 316 must be read. Within that context, those other statutes, as well as UDITPA, must be read as providing no basis for the department's actions in this case.

The same is true for the withholding provisions found in the PTE statutes. Those provisions impose withholding obligations with respect to PTEs that have nonresident owners. Subject to certain exceptions, the obligation exists as to nonresident owners without regard to whether they join in a composite return.

The obligation for the PTE to withhold is triggered when the PTE has "distributive income from Oregon sources." That, of course, requires the *entity* to determine, at the entity level, whether it has income from Oregon sources. The entity cannot rely on some later recalculation by an owner or an auditor, done at the owner level, to determine if the owner has distributive income from Oregon sources in respect of which it has a withholding obligation. Yet, such a later recalculation of Oregon source income at the owner level would be needed if the department method is employed.[44] These basic withholding rules only make sense if an owner's Oregon source income from the PTE is to be determined at the entity level and not, as the department argues, at the owner level.[45]

---

[44] Recall that the parties agree that application of the department method could result in a decrease in Oregon source income for taxpayer in some years rather than, as in this case, an increase. If such a decrease were to occur it is possible that a taxpayer could report an overall loss from Oregon sources even though some of the PTEs operating in Oregon had positive income determined at the entity level.

[45] Further, in the case where one PTE (the so-called "upper-tier" PTE) owns an interest in another PTE (the so-called "lower-tier" PTE), ORS 314.781(6) proceeds on the premise that the upper-tier PTE—the PTE "closest to" a taxable

The statute on PTE withholding, ORS 314.781(1) imposes the withholding requirement, subject to exceptions, only where the entity has distributive income from Oregon sources and an owner does "not have other Oregon source income." Neither the statute nor the department's rules clarify what is to occur if a nonresident is an owner in more than one PTE, more than one of which has Oregon source income.

That fact does not, however, detract from a demonstration of how the department theory of matters in this case is at odds with the PTE statutes and the department's own rules. Assume that taxpayer here had an ownership interest in only two PTEs, one of which had Oregon operations and the other of which had operations only outside of Oregon. Assume further that the PTEs were "unitary." Assume that taxpayer was not otherwise exempt from withholding. Assume that the Oregon PTE had positive income, being the only Oregon source income of the taxpayer. Finally, assume the out of state PTE had losses such that, in the aggregate, the unitary group had a loss.

Under the PTE statutes on withholding, the PTE with Oregon source income, determined at the entity level, would have a withholding obligation measured by taxpayer's share of the PTE Oregon source income. The ownership of taxpayer in an entity doing business profitably in Oregon would trigger a withholding obligation for the entity, because taxpayer is considered, under the PTE statutes and rules, to have an Oregon tax liability. The position of taxpayer in the case before the court would lead to the same result. However, under the position of the department in the case before the court, the Oregon income entity would not have a withholding obligation, presumably, because the losses of the out of state partnership would completely offset the Oregon source income of the nonresident partner.

The foregoing analysis shows that operation of the PTE statutes and related department rules is inconsistent

---

owner—will have a withholding liability. However, any tax withheld by the lower-tier PTE will be credited against the liability of the upper-tier PTE. This statutory rule is compatible with the conclusion that Oregon source income is determined at the entity level. It is entirely inconsistent with the department approach of source determinations being made at the level of the ultimate taxable owner.

with the department's construction of the other provisions of ORS chapters 314 and 316. However, the provisions of the PTE statutes are in all ways consistent with the position taken by taxpayer in this case and in no way consistent with the position of the department in this case.

## K.   *OAR 150-314-0385(8)*

The parties appear to differ both as to how to read OAR 150-314-0385(8) and what significance, if any, it has for this case. This rule provides:

"The apportionment factors of a corporation that is a member of a partnership, limited liability company treated as a partnership, or unincorporated joint venture (i.e. the 'related entity'), that is a part of the corporation's overall business operations, must include the corporation's share of the property, payroll, and sales of the related entity. For the purpose of computing the apportionment factors, transactions between the corporation and the related entity must be eliminated to the extent of the corporation's percentage of interest in the related entity. The corporation's share of the related entity's property, payroll, and sales are based on its percentage of interest in the related entity that is equal to the ratio of its capital account plus its share of the related entity's debt to the total of the capital accounts of all members of the related entity plus total related entity debt. The capital accounts of the members must reflect the average of the accounts for the period of the tax return. The average of the capital accounts may be computed by averaging the beginning and ending balances or monthly balances. Capital accounts of a related entity must be adjusted to reflect a member's adjusted basis in contributed property, rather than fair market value. The corporation's share of a related entity's debt is determined under IRC 752(a) and 752(b) and the regulations thereunder, irrespective of whether or not the related entity is a true partnership."

OAR 150-314-0385(8).

The rule was relied upon by the department in denying taxpayer's appeal to it from the notice of deficiency. The department appears to reason that if a corporate partner computes its Oregon source income at the partner level, then an individual partner must do the same. There are several problems with this position. The first is that the rule,

whatever its validity, does not address nonresident individuals. More importantly, the department's reliance on the rule ignores the fact that materially different statutes govern determination of income from partnerships for corporations as opposed to nonresident individuals.

Income of corporations is governed by ORS 317.010(10). Under that statute, Oregon taxable income or loss is computed by starting with taxable income or loss for federal purposes. This requires that the full distributive share of a corporate partner is included in the first step of calculation. The full federal distributive share amount, combined with other income on the federal return is then subjected to additions, subtractions, adjustments and other modifications as provided by Oregon law. Only then is the resulting amount subject to apportionment if ORS 314.280 or UDITPA applies to the corporation. Because the statute on computation of corporate income brings the full distributive share into the calculation as a first step, it is logical that the corporate partner's share of partnership apportionment factor values relates to the full partnership distributive share at the corporate level. In effect, the apportionment factor values "follow" the full distributive share amounts to the level of the corporate partner, at which level apportionment is completed in order to determine the amount of Oregon source income or loss.[46]

For nonresident individuals, the statutory directions are substantially different. The full federal distributive share is not brought into the first step of income calculation for the partner of an S corporation shareholder. Rather, under ORS 316.124(1) and ORS 316.118(2) only a "part" of the federal distributive share is included in the return of the shareholder. The determination of this "part" must therefore occur before it can be added to the partner or shareholder return. Logically that supports the conclusion that the "part" is determined at the partnership or S corporation level. Indeed, the forms issued by the department in this

---

[46] It would also be at the corporate level that combination would occur. In the past, under ORS 314.363 that would have occurred if statutory conditions were satisfied. Under current law, such combination occurs if the corporate member of the partnership is in a unitary relationship with other corporations included in a federal consolidated return.

regard provide for that calculation at that level. That being the case, there is no need for the apportionment factor values to "follow" a full federal distributive share to the level of the partner or S corporation shareholder, as no calculation of Oregon source income is made at that level. This conclusion is supported by the reasoning found earlier in this order on the proper reading of ORS 316.124(1) and, by parallel reasoning, for S corporation shareholders.[47] Under that rule, income and factors from the partnership would flow to the S corporation level.[48] At that level, apportionment, if any is required, would be completed. As previously discussed, calculation at that entity level is necessary because only a "part" of the shareholder's pro rata share of the S corporation income is subject to tax as Oregon source income.

Not only does the department's rule suffer from the foregoing features that make it inapplicable to nonresident individuals, the rule only speaks to apportionment factors "following" distributive shares of income. Nothing in the rule addresses the critical step in the department's method that combines incomes and apportionment factors. In the case of corporate partners, the combination of income and factors from partnerships with other income and factors occurs, if at all, based on the combination requirements effectively included in ORS 317.705 to 317.715.[49] However, as discussed, such combination requires statutory authority beyond UDITPA and no such statutory authority exists in respect of nonresident individuals.

## V.   CONCLUSION

The court has considered the text of the partnership tax statutes, the context of those statutes, especially the provisions of the PTE statutes and rules, the history of combined reporting in Oregon and the text and context of

---

[47] In a case where an S corporation is a partner, as in this case occurs with Pacific Bells, Inc. being a partner in HHJC, LLC, OAR 150-314-0385(8) would appear to apply.

[48] Nothing in the rule distinguishes between C corporations and S corporations. Additionally, although S corporations are generally not subject to tax, ORS 314.732 indicates that the income of S corporations is determined just as for C corporations—that is under subchapter C of the IRC.

[49] In earlier years, as discussed above, the combination would have occurred, if at all, pursuant to ORS 314.363.

UDITPA. None of these is consistent with the department position in this case—a position requiring what is essentially combined reporting and apportionment at the owner level. The position taken by taxpayer in this case is consistent with the provisions of ORS chapters 314 and 316, the PTE statutes, the history of combined reporting in Oregon and the provisions of UDITPA.

Accordingly, the court grants the motion of taxpayer and denies the motion of the department. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment is granted; and

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Partial Summary Judgment is denied.